# Exhibit 2
*Bernard v. Schech*



Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2001 WL 560983 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan,
Southern Division.
C. BERNARD and Mary Jean Webb, jointly,
Plaintiffs,
v.
Denise R. SCHECH, Peter Cardiff, Jeffrey Holden, Charter Group, and Sharkey's Billiards S. Lakeland, Inc., jointly and severally, Defendants.
No. 00-CV-75376.

April 27, 2001.

*OPINION*

DUGGAN, J.

\*1 On December 11, 2000, Plaintiffs filed a three-count complaint against Defendants Denise Schech, Peter Cardiff, Jeffrey Holden, Charter Group, and Sharkey's Billiards S. Lakeland, Inc. arising out of events relating to their investment in two Florida corporations. On February 20, 2001, Defendants Holden, Charter Group, and Sharkey's Billiards S. Lakeland, Inc. filed a motion to transfer this case to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). The Court entertained oral argument on April 26, 2001. For the reasons set forth below, Defendants' motion to transfer shall be granted.

> FN1. Defendants Schech and Cardiff defaulted. (*See* 2/13/01 Clerk's Entry of Default; 3/8/01 Clerk's Entry of Default).

Background

Plaintiffs, Bernard and Mary Jean Webb, are residents of Port Huron, Michigan. (Webb Aff. ¶ 2). However, as they own commercial and rental property in the state of Florida, they normally spend up to forty percent of their time in Florida overseeing their properties. (Webb Aff. ¶ 7-8).

In this action, Plaintiffs essentially allege that the named Defendants participated in a scheme to defraud the Plaintiffs of their investments in two Florida corporations. Plaintiffs became acquainted with Defendant Peter Cardiff ("Cardiff") and Defendant Denise Schech ("Schech") in Florida in approximately May of 1999. (Webb Aff. ¶ 9). Plaintiffs claim that on or about July, 1999, they purchased 100% of the common stock of Citrus Processors, Inc. ("Citrus") and Schech Pacific Corp. ("Pacific") from Schech. (Compl. ¶ 5 & 7). Both Citrus and Pacific are Florida corporations. Citrus conducts business in Lakeland, Florida under the name of "Bradley's Restaurant," while Pacific conducts business in this same area under the name(s) "Smilin Jacks" and/or "Island Jacks." (Compl.¶ 6).

Schech, Cardiff's girlfriend, continued on as the Chief Operating Officer of Citrus and Pacific until her positions were terminated in November of 2000. (Compl.¶ 7). Plaintiff Mary Jean Webb became President of Citrus on October 1, 1999. (Compl.¶ 18).

Plaintiffs claim that Defendant Jeffrey Holden ("Holden") is the "silent partner" of Cardiff and Schech, and "is a control person with respect to the daily operations and management of Citrus and Pacific." (Compl.¶ 9). Plaintiffs further claim that Defendant Charter Group and Defendant Sharkey's Billiards S. Lakeland, Inc. ("Sharkey's Billiards") " are d/b/a's and/or controlled entities owned, operated and controlled by Holden" and claim that Holden carried on or conducted illegal acts alleged in this action through these entities. (Compl.¶ 10).

Plaintiffs allege that the Defendants committed various acts to defraud the Plaintiffs of their investment in Citrus and Pacific. For example, Plaintiffs claim that the Defendants made various untrue and deceptive statements to Plaintiffs to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

induce them to invest in the common stock and securities of Citrus and Pacific. (Compl.¶ 34). Plaintiffs also allege that Schech and Cardiff, with Holden's knowledge, fraudulently misrepresented to Plaintiffs that Pacific owned a liquor license used by Smilin Jacks/Island Jacks restaurant and that Plaintiffs owned 100% of Citrus and Pacific. (Compl. ¶¶ 14 & 21). Plaintiffs also allege that from approximately May of 1999, to November of 2000, the Defendants submitted false and fraudulent credit applications and personal guarantees bearing the forged signature of Plaintiff Mary Jean Webb to: Advanta Leasing Services, Preferred Capital Corp., B & R Foods, Southwest Bank, Reiland Insurance, Universal Merchant Services, Termnet Merchant Services, and Arbitrronix Financial Services. (Compl.¶ 25).

*2 On December 11, 2000, Plaintiffs filed a three-count complaint against Defendants in this Court. The counts are entitled: "Violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10B-5" (Count I); "Negligent Misrepresentation" (Count II); and "Breach of Fiduciary Duty" (Count III).

On December 13, 2000, on the advice of legal counsel, Plaintiffs closed both businesses and filed for bankruptcy on behalf of Pacific and Citrus. (Webb Aff. ¶ 45). The bankruptcy petitions were filed in the United States Bankruptcy Court in the Middle District of Florida. (Holden Aff. ¶ 23; Pls.' Ex. G). The bankruptcy proceedings are still pending in the Middle District of Florida.

On February 20, 2001, Defendants filed the instant motion to transfer the case to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). On this same date, Defendant Holden filed a counter/cross-complaint against Plaintiffs and Defendants Schech and Cardiff.

When Plaintiffs filed their response to Defendants' motion to transfer on March 19, 2001, they also filed a motion to dismiss/for summary judgment as to Defendant Holden's counter complaint.

Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). By its plain language, this provision requires the satisfaction of three criteria: 1) that the action could have been brought in the transferee district; 2) that a transfer serves the interest of justice; and 3) that a transfer is in the convenience of the witnesses and parties. *Kepler v. ITT Sheraton Corp.,* 860 F.Supp. 393, 398 (E.D.Mich.1994).

In ruling on a § 1404(a) motion, Courts consider factors such as: 1) the convenience of the parties; 2) the convenience of the witnesses; 3) the relative ease of access to sources of proof; 4) the availability of process to compel attendance of unwilling witnesses; 5) the cost of obtaining willing witnesses; 6) the practical problems associated with trying the case most expeditiously and inexpensively; and 7) the interest of justice." *International Show Car Assoc. v. American Soc'y of Composers Authors and Publishers,* 806 F.Supp. 1308, 1310 (E.D.Mich.1992)(citing *Hite v. Norwegian Caribbean Lines,* 551 F.Supp. 390 (E.D.Mich.1982). "In short, the Court may consider any factor that may make any eventual trial 'easy, expeditious, and inexpensive .' " *Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

A district court has broad discretion to transfer a case under 28 U.S.C. § 1404(a). *Phelps v. McClellan,* 30 F.3d 658, 663 (6th Cir.1994). However, "[u]nless the balance strongly favors the defendant, the plaintiff's choice of forum should rarely be disturbed." *Clark v. Yellow Freight System, Inc.,* 715 F.Supp. 1377, 1380 (E.D.Mich.1989).

> FN2. Plaintiffs suggest that under *Borg v. L & J Energy, Inc.,* deference to their choice of forum is particularly appropriate in this case involving alleged securities violations, "since the venue provision of the Act is designed to serve the underlying federal policy of allowing the plaintiff the widest possible choice of forums." *Borg v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 560983 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

*L & J Energy, Inc.,* 1990 WL 122225 at *5 (W.D.Mich.1990).

### I. *The Action Could Have Been Brought in the Middle District of Florida*

*3 It is undisputed that this action could have been brought in the Middle District of Florida. Plaintiffs filed this action alleging violations of federal securities laws. Under 28 U.S.C. § 1391(b)(2), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought ... in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The corporations involved in this case are both located within the Middle District of Florida and a substantial part of the actions alleged by Plaintiffs occurred in this area as well. Accordingly, this action could have been brought in the Middle District of Florida.

### II. *A Transfer is in the Convenience of the Witnesses and Parties*

Consideration of the convenience of the witnesses and parties in this action tips the balance strongly in favor of transferring this action to the Middle District of Florida.

#### A. *Convenience of the Parties*

The Burden to the Defendants of having to litigate this action in Michigan would be substantial. Defendant Holden is a resident of Florida and has never lived in or even visited Michigan. (Holden Aff. ¶¶ 2-5). Defendants Charter and Sharkey's Billiards, Florida corporations with their principal place of business in Florida, have never owned property or maintained an office in Michigan. (Charter Aff. ¶¶ 3 & 5; Sharkey's Billiards Aff. ¶ ¶ 3 & 5). Thus, if this action remains in Michigan the Defendants will be forced to travel to an unfamiliar state for the sole purpose of defending this lawsuit.

On the other hand, the burden to the Plaintiffs if this action is tried in Florida is quite minimal. Although they state that they do not own a "home" in Florida, they do own rental property in Florida. Plaintiffs acknowledge that they "customarily" spend up to 40% of their time in Florida. Thus, unlike Defendants, Plaintiffs will not be in a situation where they are forced to travel to an unfamiliar state for the sole purpose of litigating this action.

Accordingly, consideration of the convenience of the parties favors the transfer of this action to Florida.

#### B. *Convenience of the Witnesses*

"Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A § 1404(a) is the convenience of witnesses." 15 Wright & Miller, Federal Practice and Procedure § 3851 at 415 (2d ed.1986).

In his affidavit, Defendant Holden states that every non-party witness he intends to call to testify in this case, 17 in all, resides in Florida. (Holden Aff. ¶ 18). However, the sheer number of prospective witnesses alone should not determine whether a transfer is appropriate; rather, the materiality of the anticipated testimony should also be considered. *Catalano v. BRI, Inc.,* 724 F.Supp. 1580, 1584 (E.D.Mich.1989).

> FN3. Defendants Charter Group and Sharkey's Billiards also filed affidavits, indicating that they intend to call the same witnesses that are listed in Defendant Holden's affidavit.

In this action, Plaintiffs allege that the Defendants committed various acts to defraud Plaintiffs of their investment in Citrus and Pacific, corporations that conduct business as restaurants named Bradley's and Smilin Jacks/Island Jacks. Holden states that the following Florida residents worked for either Citrus, Pacific, Island Jacks, or Bradleys, and have relevant knowledge as to his involvement with the Plaintiffs, Pacific, and Citrus: Tommy Paradise, Robert Alexander, Leslie Vincent, and Simon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                             Page 4

Not Reported in F.Supp.2d, 2001 WL 560983 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

Houston. (*Id* .). Holden also states that the following Florida residents were employees or independent contractors of Charter Group, and have relevant knowledge about his involvement in Citrus and Pacific: Joseph Pinto, Heather Mace, Brian Scanlon, and Frank Fonte. (*Id.*).

*4 Holden also intends to call Florida residents Janice Masters and Brad Nelson as witnesses in this case. As mentioned previously, Plaintiffs allege that Defendants fraudulently misrepresented that Pacific owned a liquor license used by Smilin Jacks/Island Jacks restaurant. (Compl. ¶¶ 14 & 21). Masters and Nelson are both staff members of the Florida Division of Alcoholic Beverages and Tobacco, and Holden states that they both have relevant knowledge regarding the liquor license used by Island Jacks.

As stated supra, Plaintiffs allege that Defendants fraudulently submitted credit applications and personal guarantees bearing the forged signature of Plaintiff Mary Jean Webb to eight different businesses. (Compl.¶ 25). Holden intends to call as witnesses representatives of seven of these eight businesses who all, to the best of his knowledge, are located in Florida. (Holden Aff. ¶ 18). By way of example, Defendants assert that these witnesses would be needed to establish who would have been in a position to commit the forgeries alleged by Plaintiffs. (Defs.' Reply at 3 n. 5).

Notably, in response to Defendants' motion for transfer, Plaintiffs do not list a single non-party witness that they intend to call who resides in Michigan. Rather, Plaintiffs simply argue that two of the prospective witnesses identified by Holden have "no objection" to giving testimony in this district, and argue that Defendants have not alleged that any of the non-party witnesses will be inconvenienced or demonstrated that any "real inconvenience exists." (Pls.' Resp. at 7).

> FN4. Plaintiffs also note that in Plaintiffs' affidavit, Plaintiffs state that Advanta Leasing Services, Termnet Merchant Services, and Preferred Capital Corporation are businesses that are not located in Florida. (Pls.'s Aff. ¶ 49). Rather, Plaintiffs state that these businesses are located in New Jersey, Georgia and California, respectively. (*Id.*). Even if true, this does not discount the fact that Defendants intend to call representatives of the other businesses that do appear to be in Florida.

At the hearing on April 26, 2001, counsel for Plaintiffs argued that Defendants' claim that non-party witnesses will be inconvenienced should not be persuasive because, in Plaintiffs' counsel's view, testimony from these witnesses will not be necessary. At this point of the proceedings, however, the Court is not prepared to conclude that the testimony of the non-party witnesses identified by Defendant will not be necessary. Certainly, based on the information presented to the Court at this time, it appears that it would be inconvenient for *any* of the non-party witnesses to be required to testify in Michigan.

Therefore, this factor weights in favor of transfer.

### III. *A Transfer is in the Interests of Justice*

In light of all the circumstances of this case, the Court finds that a transfer is in the interests of justice. "Although plaintiffs' choice of forum should be granted some deference, 'it is undisputed that courts will not blindly prefer the plaintiff's choice of forum." *Kepler,* 860 F.Supp. at 399. As a practical matter, the Court believes that given the overwhelming nexus between Plaintiffs' claims and the state of Florida, litigating this case in Florida will be significantly easier, more expeditious, and far less expensive than litigating in this Court.

> FN5. As Defendants note, even if Plaintiffs ultimately obtained a judgment in this Court against any of the Defendants, the Plaintiffs would still have to execute that judgment in Florida, as Defendants have no assets in Michigan.

Conclusion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 5

Not Reported in F.Supp.2d, 2001 WL 560983 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.2d)**

For the reasons set forth above,

Defendants motion for transfer pursuant to 28 U.S.C. § 1404(a) is granted, and Plaintiffs' complaint is transferred to the United States District Court for the Middle District of Florida.

> FN6. In light of the Court's decision to transfer this case, the Court will not consider the merits of Plaintiffs' motion to dismiss Defendant Holden's counter complaint.

**\*5** An Order consistent with this Opinion shall issue forthwith.

E.D.Mich.,2001.
Bernard v. Schech
Not Reported in F.Supp.2d, 2001 WL 560983 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2:00CV75376 (Docket) (Dec. 11, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.