# Exhibit 3
*Danuloff v. The Color Center*



Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan.
Craig DANULOFF, Plaintiff,
v.
The COLOR CENTER, a Massachusetts joint venture, Color Across America, a Massachusetts joint venture, Thomas Munroe, Inc., a Massachusetts corporation, and Scitex America Corp., a Massachusetts corporation, Defendants.
No. 93-CV-73478-DT.

Nov. 22, 1993.

*OPINION*

DUGGAN, District Judge.

*\*1* This is a diversity action in which plaintiff, Craig Danuloff, has sued defendants, Thomas Munroe Incorporated, ("TMI"), Scitex of America Corporation, ("SAC"), and The Color Center, ("TCC"). Currently pending before this Court are several motions submitted on behalf of the various defendants. Defendant TMI filed a motion to transfer pursuant to 28 U.S.C. § 1404(a), or in the alternative, to dismiss. Defendants SAC and TCC also filed a motion to transfer. TCC also filed an motion to dismiss based on lack of personal jurisdiction. This Court has reviewed the briefs and supporting documents submitted by the parties with respect to these motions. The Court also had the benefit of oral argument of counsel in a hearing conducted on November 18, 1993. For the reasons that follow, Defendants' motion to transfer is granted, and the motions to dismiss are denied.

*BACKGROUND*

This action arises out of a dispute between plaintiff and TMI over plaintiff's employment at TMI and his participation in TMI's second Color Across America®)) ("Color Across America® II") seminar series. Plaintiff was hired by TMI as an employee and vice-president to prepare the marketing brochures describing the seminar series for graphic arts professionals, and to manage the seminar series. He also served as a faculty member for the Color Across America® II seminars. Plaintiff's employment ended in December 1992, after the brochures for the series had been printed and distributed to several geographical markets.

Plaintiff alleges that subsequent to his separation from TMI, he requested TMI to cease distributing the brochures that identified him as a faculty member of the seminars, and included a reference to his past employment association with TMI. On January 21, 1993, TMI and plaintiff entered into a settlement agreement which allowed TMI to continue using the brochure until a new one could be produced. (White Aff. at ¶¶ 36-38 and Exhibit 3). At oral argument, the parties indicated that the litigation between plaintiff and TMI, pending before Massachusetts' Middlesex County Court, has been resolved.

In the action currently before this Court, plaintiff alleges that TMI wrongly distributed Color Across America® II brochures "to hundreds of thousand of individuals and entities located throughout the United States" after December 1992. (Complaint ¶ 20). He contends that TMI's actions intentionally and maliciously harmed his national reputation and hampered his efforts to obtain new employment.
The scheduled seminars spanned the country. (White Aff. at ¶ 25). Between December 1992 and February 1993, 188,642 copies of the brochure were distributed to 16 different states as well as the District of Columbia. In all, there were 27 seminar locations, including one in Michigan. Plaintiff initially filed his five count complaint in Wayne County Circuit Court. On August 18, 1992, the case was properly removed to this Court by defendants.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

## DISCUSSION

\*2 The Court first considers the propriety of a transfer, then addresses the issue of personal jurisdiction over TCC, and TMI's motion to dismiss.

### A. MOTION TO TRANSFER

Title 28, U.S.C. 1404(a) provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

To transfer an action under 28 U.S.C. 1404(a) the following criteria must be met: (1) the action could have been brought in the transferee district court; (2) a transfer serves in the interest of justice; and (3) transfer is in the convenience of the witnesses and parties. *International Show Car Ass'n v. ASCAP,* 806 F.Supp. 1308, 1310 (E.D.Mich.1992). The court ruling on a 1404(a) motion to transfer considers the following factors:
(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Id.* at 1310 (citations omitted). In short, the Court may consider any factor that may make any eventual trial "easy, expeditious, and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Supreme Court held that the showing required under 1404(a) is less stringent than that in a motion under *forum non conveniens. Piper Aircraft Co. v. Reyno,* 545 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1989).

### (1) "Might Have Been Brought"

There is no dispute that this action "might have been brought" in the federal district court in Massachusetts.

### (2) *Plaintiff's Choice of Forum*

All defendants request a transfer, which the plaintiff vigorously opposes. Plaintiff is a resident of Seattle, Washington. He neither resides nor conducts business in this forum. SAC manufactures and sells computer graphics equipment. It is a Massachusetts corporation which has its principal place of business in Bedford, Massachusetts. TMI is also a Massachusetts graphic arts corporation which specializes in training people in "desktop" publishing and the use of computerized graphics equipment. Its principal place of business is in Cambridge, Massachusetts. TCC is a Massachusetts general partnership between SAC and TMI, with offices in Cambridge, Chicago, and Los Angeles. It conducts hands-on training in "desktop" publishing and the use of computer graphics equipment in its offices. This law suit has only two connections with this district. First, plaintiff's counsel practices law in Michigan. This Court finds that any inconvenience that might enure to either parties' counsel is unpersuasive and does not alter this Court's determination under 28 U.S.C. § 1404. *Hite v. Norwegian Caribbean Lines,* 551 F.Supp. 390, 395 (E.D.Mich.1982).

\*3 The second connection is that plaintiff filed his complaint in the Wayne County (Michigan) Circuit Court. Although it is true that "[u]nless the balance strongly favors the defendant, the plaintiff's choice of forum should rarely be disturbed," *International Show Car,* 806 F.Supp. at 1312, plaintiff, here, did not choose this Court as his forum. Rather, plaintiff chose Wayne County Circuit Court as his forum; plaintiff's claim came before this Court only after defendants had removed the action. *Hite,* 551 F.Supp. at 394-95.

Moreover, it is undisputed that "[c]ourts will not blindly prefer the plaintiff's choice of forum." *Waste Distillation Tech. v. Pan American Res.,* 775 F.Supp. 759, 764 (D.Del.1991). A "movant's burden is easier where the plaintiff has not brought suit on its 'home turf' because the interest in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.             Page 3

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

litigating in a convenient forum is reduced." *Id.* It has been stated that:

where a plaintiff chooses to litigate away from its principal place of business, "the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff."

*Id.* (citations omitted). In light of the facts set forth above, plaintiff's choice of forum has reduced significance in this analysis.

### (3) Convenience of Parties and Witnesses

The location of relevant witnesses is another important factor to be considered in a transfer application. The convenience of the witnesses is especially compelling in this case given the nature of the action. Plaintiff alleges that defendants' defamed him. Regardless of the controlling law in this case, plaintiff must establish the falsity of the offending statements, and establish how these statements actually caused the complained of damages. In all likelihood, both parties will rely on documentary evidence. But to probe the state of mind of the responsible defendants and their employees, plaintiff probably will present viva voce testimony. Defendants have asserted that they will rely upon its responsible officers and employees as part of its defense.

This Court is satisfied that defendants have met their burden under Section 1404(a) and demonstrated that they will suffer great inconvenience and expense if this case continues in this forum. SAC and TCC state that at least three of SAC's officers and a financial analyst employee will be key witnesses in discovery and at trial, and also that they plan to rely on the testimony elicited from TMI's former and current president. (Thiel Aff. at ¶ 10). All of these witnesses are located in Massachusetts. (*Id.* & Brief at 8-9). The affidavits presented by SAC and TCC adequately specify the identity, nature, and materiality of the testimony from those witnesses. (Thiel Aff. at ¶¶ 10-12 and Brief at pp. 8-12) The principal employees that will provide relevant and necessary testimony on behalf of TMI reside in or around Boston. Four of TMI's six employees are identified as significant witnesses in this matter. (White Aff. ¶¶ 48-54a). Defendant TMI specifies both the identity of its witnesses that would be inconvenienced, as well as the nature and significance of their testimony. (*Id.*) A review of the pleadings leads this Court to conclude that the relevant non-party witnesses in this action will likely be those customers solicited by defendants through the mailings of TMI's Color Across America® II brochures, as well as former TMI employees. These witnesses appear to be located across the country. It is evident that both parties will likely call non-forum witnesses regardless of where any trial in this case ultimately transpires. The Court finds it significant that plaintiff is claiming damages on a nationwide basis. A change in venue from one major city to another results in little overall inconvenience where the witnesses are dispersed throughout the country.

*4 Plaintiff contends that a great number of his witnesses reside in Michigan, but concedes that other potential witnesses reside outside of this forum as well:

The key non-party witnesses that I intend to call ... are the multitude of Michigan residents who received the false information through Brochures or otherwise and the Michigan residents who attended the February 25, 1993 seminar and training activities and classes in Detroit, Michigan ... Other potential key non-party witnesses presumably reside in numerous other states, including, but not limited to, Washington.

(Danuloff Aff. at ¶¶ 41-42). At oral argument, counsel for plaintiff asserted what he believed would be the relevant testimony from the witnesses in Michigan. Counsel, however, did not assert that he could identity any of these witnesses who actually reviewed the brochures to the extent that they were aware of plaintiff's name in the brochure; and counsel did not even assert that any of such witnesses would offer testimony which would support plaintiff's contention that his reputation was "harmed" by such brochures; or that his efforts to obtain employment were adversely affected. In this Court's opinion, plaintiff's inability to give some assurance to this Court that such witnesses will be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

able to offer relevant testimony causes this Court to give little, if any, weight to the importance of plaintiff's non-party witnesses as a factor in the Court's decision of whether or not to transfer. *International Show Car,* 806 F.Supp. at 1311-12.

In contrast, defendants provide the approximate number and identity of potential key non-party witnesses, and the nature of their testimony. These witnesses reside in or around Massachusetts and New Jersey. Defendants contend that theses witnesses would be severely inconvenienced if trial were held in this Court. Accordingly, transferring this case would be at the convenience of at least some number of the witnesses.

Based on a review of the potential party/employee witnesses and non-party witnesses to be called, this factor clearly favors a trial in Massachusetts. Defendants' affidavits have illustrated that if this case should go to trial, a number of defendants' key employees who are prospective witnesses would have to interrupt their normal business activities in order to come to this district and testify. Given the size of defendants' staffs and their budgetary constraints, this could pose a significant disruption to defendants' business operations. This is a factor that weighs in favor of transfer. *International Show Car,* 806 F.Supp. at 1311-13.

Furthermore, the cost would be great to secure defendants' essential witnesses' attendance at trial in this Court. This Court concludes that defendants have shown that the inconvenience of them remaining in this forum clearly outweighs the inconvenience to plaintiff, should this case be transferred to Massachusetts.

### (4) Location of Documents

*5 Defendants also contend that all the relevant documentary evidence is located in Massachusetts. Although the location of evidence may be a factor in determining whether a case should be transferred, it is not enough simply to assert that transfer is necessary because relevant documents are at the defendants' main office in the proposed transferee district. Rather, defendants need to demonstrate that a large volume of documentary evidence must be transported and that it is not possible to reduce the volume through other discovery techniques. *Richards v. Upjohn Co.,* 406 F.Supp. 405 (E.D.Mich1976). In this case, defendants have not established the necessity of transporting large volumes of documents nor that the volume cannot somehow be consolidated through other devices.

### (5) *Relative Means of the Parties*

The Court may consider the relative means of the parties in cases where a disparity between the parties, such as an individual plaintiff suing a large corporation, exists. *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 989 (E.D.N.Y.1991). In this case, although defendants are small businesses and plaintiff is an individual. This Court is not persuaded that litigating this action in Massachusetts would pose an *undue* hardship upon the plaintiff. Plaintiffs reliance on *Austin v. International Brotherhood of Teamsters-Airline Div.,* 739 F.Supp. 206 (S.D.N.Y.1990) is misplaced. In *Austin,* plaintiff stated in her affidavit that she would be "unable to go to Michigan to pursue the action on account of sever financial strain." *Id.* at 208. The court found that the transferee forum was not proper because the plaintiff would be precluded from pursuing her claim in the alternative forum. *Id.* at 208-09. In reaching this decision, however, the court emphasized that "[t]he basis for this decision is not to be construed broadly. Indeed, if plaintiff were in a more secure financial situation, the outcome would probably be different." *Id.* at 209.

Here, plaintiff simply states that he "will incur the least financial hardship in prosecuting his claims in Michigan." (Brief at 8). Although plaintiff characterizes himself as a "financially strapped individual," he neither suggests nor illustrates that he would be precluded from bringing his suit if this Court granted defendants' motion to transfer. (Brief at 9, Danuloff Aff. at ¶ 40). Accordingly, this Court finds that this factor is of little or no significance in the analysis under the facts presented in this case.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

*(6) Forum's Familiarity with Controlling Law*

In this Court's view, this factor is of little import to this Court's decision on the present motion to transfer, regardless of the controlling law under which this case is tried. The present case, an action alleging a variety of tortious acts, does not appear to present any novel or complex issues. Thus, regardless of what state law controls, it does not appear that state tort law is so unique that this fact alone should strongly militate either for or against transfer. *Midwest Motor Supply Co., Inc. v. Kimball,* 761 F.Supp. 1316, 1319 (S.D.Ohio 1991). "[F]amiliarity with state law does not weigh heavily in consideration of a motion to transfer since federal courts must often undertake the task of applying foreign law...." (Plaintiff's Combined Brief at 16).

*(7) "In the Interest of Justice"*

*6 Balancing all the material circumstances of this case in light of the factors set forth above, this Court finds that in the interest of justice, the action should be transferred to Massachusetts.

An additional ground supports this outcome. TCC is also seeking to dismiss the present action, asserting that this Court lacks personal jurisdiction over it. Fed.R.Civ.P. 12(b)(2). Numerous courts have ruled that the interest of justice is served when a case is transferred from a forum where there is a difficult question of personal jurisdiction to a district in which personal jurisdiction is clearly established. *See e.g., Datasouth Computer v. Three Dimensional Tech.,* 719 F.Supp. 446, 452-53 (W.D.N.C.1989) (providing collection of cases). A change of venue may conserve judicial resources, and serve the interests of the parties as well by avoiding an investment of substantial time, money and effort, eliminating the need for discovery because it will render moot the dispute over minimum contacts.

In the case at bar, there is a serious question whether this court's assertion of personal jurisdiction over TCC meets the requirements of the due process clause of the United States Constitution. Resolution of this issue may require a substantial expenditure of additional resources. On the other hand, a change of venue to the District of Massachusetts will completely moot the issue of personal jurisdiction, because that district is where TCC is incorporated and is certainly subject to the in personam jurisdiction of the federal courts. Moreover, if this Court granted TCC's motion to dismiss, it is conceivable that plaintiff could refile his complaint in an appropriate forum; the parties then would face the prospect of duplicative litigation proceeding in separate forums. This would result in an inefficient duplication of judicial efforts.

### B. IN PERSONAM JURISDICTION

For the reasons cited above, this Court grants defendants' motion to transfer without resolving the jurisdictional issue. Therefore, TCC's motion to dismiss for lack of personal jurisdiction is denied, without prejudice.

### C. MOTION TO DISMISS-FORUM NON CONVENIENS

TMI alternatively moves for dismissal based on the doctrine of *forum non conveniens.* In light of this Court's decision on defendants' motion to transfer, this Court declines to reach the merits of the motion to dismiss.

### CONCLUSION

For the aforementioned reasons, defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) shall be granted, defendant TCC's motion to dismiss shall be denied, and TMI's motion to dismiss shall be denied. Accordingly, this case shall be transferred to the federal district court in Massachusetts. An Order consistent with this Opinion shall issue forthwith.

FN1. Plaintiff has also named Color Across America® as a defendant in this action. At oral argument on November

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 6

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

18, 1993, counsel for defendants stated that Color Across America® is a Massachusetts registered trademark of TMI. Counsel for plaintiff disagreed. This issue can be resolved at a later date.

FN2. The series consisted of 39 two-day seminars scheduled from December 3, 1992 until May 6, 1993. The brochure contained biographical information on the faculty members. It also contained a brief reference to the Color Center's services. The parties have submitted numerous affidavits indicating that SAC provided equipment for TMI's first Color Across America® series, but not for the second series.

FN3. Of the 188,642 copies mailed out, 8,460 were mailed to graphic arts professionals in Michigan. The Michigan seminar was conducted in February 1993, and taught by P. White, the President and CEO of TMI, and N. Goodhue, the former President of TMI.

FN4. "Although the statute was drafted in accordance with the doctrine of *foreign non conveniens* ... it was intended to be a revision rather than a codification of the common law. District courts were given more discretion to transfer under 1404(a) than they had to dismiss on grounds of *foreign non conveniens*.... The statute was designed as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Id.*

FN5. SAC does not have any offices or facilities in Michigan. Although it has seven SAC employees who work in Michigan, they report to SAC's office in Chicago, and none of them could be called as witnesses to this action.

FN6. SAC provides the equipment and performs the administrative tasks for TCC. TMI develops and conducts the training programs. TCC has no facilities, employees, or agents working on its behalf in Michigan. TCC did not teach or otherwise participate in TMI's Color Across America® seminars.

FN7. Over 95% of the brochures were distributed outside of Michigan, and over 95% of the seminars were conducted outside of Michigan. (SAC/CC Brief at 13).

FN8. Although the limitation of this Court's subpoena power, *see* Fed.R.Civ.P. 45(e), is an important consideration, as previously indicated in this Opinion, the Court has not been persuaded that there is any need to present the live testimony of any particular non-party witness, nor has it been shown that a witness would be unwilling to appear. Presumably, TMI's former president would be willing to testify at trial on behalf of defendants. However, this Court does not possess subpoena power over TMI's former president; nor does it possess subpoena power over any customers who defendant might call who are non-residents of Michigan.

FN9. Also cutting against his argument is the fact that he brought suit against defendant-TMI in state court in Massachusetts.

FN10. The parties disagree with respect to the application of Michigan's choice of law provisions to these facts.

FN11. Plaintiff's complaint avers two counts of invasion of privacy, tortious interference with business relations, unjust enrichment, and defamation.

FN12. Even if this Court does not have jurisdiction over TCC, it is clear that this Court still has the power to transfer the action to another district pursuant to 28 U.S.C. § 1404(a). *Datasouth,* 719 F.Supp at 449-50; *Goldlawr, Inc. v. Heiman,* 369

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7

Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)
**(Cite as: Not Reported in F.Supp.)**

U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Taylor v. Love,* 415 F.2d 1118 (6th Cir.1969) *cert denied,* 397 U.S. 1023 (1970); *Big Baby Co. v. Schecter,* 812 F.Supp. 442, 444 (S.D.N.Y.1993); *Volk Corp. v. Art-Pak Clip Art Serv.,* 432 F.Supp. 1179 (S.D.N.Y.1977).

E.D.Mich.,1993.
Danuloff v. Color Center
Not Reported in F.Supp., 1993 WL 738578 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2:93CV73478 (Docket) (Aug. 18, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.