**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

NEW WORLD SYSTEMS CORPORATION,

                       Plaintiff,            Case No. 2:06-cv-11603
                                               Hon. Denise Page Hood

v.

CHAUNCEY JONES and TYLER          Magistrate Judge Virginia M. Morgan
TECHNOLOGIES, INC.,

                       Defendants.

---

| | |
|---|---|
| SAFFORD & BAKER, PLLC | VERCRUYSSE, MURRAY & CALZONE, PC |
| Ralph R. Safford (P24633) | Daniel J. Bernard (P34225) |
| Mary Ann Hart (P48994) | William E. Altman (P52788) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 40900 Woodward Avenue, Suite 275 | 31780 Telegraph Road, Suite 200 |
| Bloomfield Hills, Michigan 48304 | Bingham Farms, Michigan 48025 |
| (248) 646-9100 | (248) 540-8019 |

Claudia V. Babiarz (P36230)
Co-Counsel for Plaintiff
888 W. Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 269-1000

---

**PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND OTHER RELIEF**

New World Systems Corporation ("New World"), by and through its attorneys, Safford & Baker, PLLC, and Claudia Babiarz, moves pursuant to Fed. R. Civ. P. 65 for a preliminary injunction against Defendants Chauncey Jones and Tyler Technologies, Inc. ("Tyler"). New World asks this Court to enforce the noncompetition agreement between New World and Jones; enjoin Jones and Tyler from utilizing New World's trade secrets and confidential information;

and order Defendants, at Defendants' expense, to allow a third party to examine their computer systems to determine whether any of New World's confidential and proprietary information is present.

In conferences on April 17, 2006, and April 20, 2006, Plaintiff explained to Defendants the nature of this Motion and its legal basis, and sought Defendants' concurrence in this Motion; however, the requested concurrence has been denied.

                                            SAFFORD & BAKER, PLLC

Dated: April 26, 2006                By:   s/ *Mary Ann Hart*

                                            Ralph R. Safford (P24633)
                                            Mary Ann Hart (P48994)
                                            Attorneys for Plaintiff
                                            40900 Woodward Avenue, Suite 275
                                            Bloomfield Hills, Michigan 48304
                                            (248) 646-9100

                                            Claudia V. Babiarz (P36230)
                                            Co-Counsel for Plaintiff
                                            888 W. Big Beaver Road, Suite 600
                                            Troy, Michigan 48084
                                            (248) 269-1000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW WORLD SYSTEMS CORPORATION,

                   Plaintiff,         Case No. 2:06-cv-11603
                                                     Hon. Denise Page Hood

v.

CHAUNCEY JONES and TYLER          Magistrate Judge Virginia M. Morgan
TECHNOLOGIES, INC.,

                   Defendants.

_____

| SAFFORD & BAKER, PLLC | VERCRUYSSE, MURRAY & CALZONE, PC |
|---|---|
| Ralph R. Safford (P24633) | Daniel J. Bernard (P34225) |
| Mary Ann Hart (P48994) | William E. Altman (P52788) |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 40900 Woodward Avenue, Suite 275 | 31780 Telegraph Road, Suite 200 |
| Bloomfield Hills, Michigan 48304 | Bingham Farms, Michigan 48025 |
| (248) 646-9100 | (248) 540-8019 |

Claudia V. Babiarz (P36230)
Co-Counsel for Plaintiff
888 W. Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 269-1000

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION AND OTHER RELIEF**

## TABLE OF CONTENTS

Issues Presented ................................................................................................................ ii

Table of Authorities ......................................................................................................... iii

Statement of Facts ..............................................................................................................1

Argument ............................................................................................................................5

    I.    This Court should issue a preliminary injunction barring Defendants from both utilizing and disclosing New World's proprietary and confidential materials and/or information ................................................................................................5

    II.    This Court should enter a preliminary injunction barring Jones from violating the Non-Competition Clause of the Agreement ...................................................................................................7

    III.    This Court should enter a preliminary injunction barring Tyler from tortious interference with the contractual relations between New World and Jones and unfair competition .................................................................................................9

    IV.    This Court should order Defendants, at their expense, to allow a third party to examine their computer systems to determine whether any of New World's confidential and proprietary information is present ................................................................9

Relief Requested ..............................................................................................................10

## ISSUES PRESENTED

I. **Should this Court issue a preliminary injunction barring Defendants from both utilizing and disclosing New World's proprietary and confidential materials and/or information?**

II. **Should this Court issue a preliminary injunction barring Jones from violating the non-competition provision of the Employment Agreement?**

III. **Should this Court issue a preliminary injunction barring Tyler from tortious interference with the contractual relations between New World and Jones and unfair competition?**

IV. **Should this Court order Defendants, at their expense, to allow a third party to examine their computer systems to determine whether any of New World's confidential and proprietary information is present?**

## TABLE OF AUTHORITIES

**Federal Cases**

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) ..................................................................................7

*Emerson Electric Co. v. Rogers*,
418 F.3d 841 (8th Cir. 2005) ..................................................................................8

*Henkel Corp. v. Cox*,
386 F. Supp. 2d 898 (E.D. Mich. 2005)........................................................5, 7, 10

*Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*,
788 F. Supp. 1438 (E.D. Mich. 1992)....................................................................9

*Lowry Computer Products v. Head*,
984 F. Supp. 1111 (E.D. Mich. 1997).....................................................................7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*,
67 F. Supp. 2d 764 (E.D. Mich. 1999).........................................................5, 7, 8

*PepsiCo, Inc. v. Redmond*,
54 F.3d 1262 (7th Cir. 1995) ..................................................................................8

*Webcraft Technologies, Inc. v. McCaw*,
674 F. Supp. 1039 (S.D.N.Y. 1987).......................................................................6

*Worthy v. Michigan*,
142 F. Supp. 2d 806 (E.D. Mich. 2000).................................................................5


**Michigan Cases**

*Clipper Belt Lacer Co. v. Detroit Belt Lacer Co.*,
223 Mich. 399; 364 N.W.2d 609 (1984)................................................................9

*Hayes-Albion v. Kuberski*,
421 Mich. 170; 364 N.W.2d 609 (1984)................................................................6

**Michigan Statutes**

M.C.L. § 445.774a .................................................................................................................7, 9

M.C.L. § 445.1901 ....................................................................................................................5

M.C.L. § 445.1902 ....................................................................................................................5

M.C.L. § 445.1903 .................................................................................................................6, 8

Case 2:06-cv-11603-DPH-VMM    ECF No. 6, PageID.158    Filed 04/26/06    Page 7 of 18

## STATEMENT OF FACTS

Plaintiff New World Systems Corporation ("New World") is a Michigan corporation which maintains its principal place of business in Troy, Michigan. New World is a public sector software company that develops integrated software solutions for state and local governments.

From September 1998 to January 2006, New World employed Defendant Chauncey Jones as a sales representative. New World assigned Jones to solicit sales of New World products and services in Florida, Alabama, South Carolina, and Mississippi.

On September 21, 1998, New World and Jones entered into an Employment Agreement. See **Ex. 1**. The Employment Agreement contains a Non-Competition provision in which Jones agreed that, in the event that he was employed by New World for six years or more, he would not compete with New World for a period of four years after the termination of his employment with New World. **Ex. 1**, p. 2.

The Employment Agreement also contains a Non-Disclosure provision pursuant to which Jones agreed that he would not use or disclose information or property held confidential by New World including (but not limited to) customer lists, prospect lists, business practices, and pricing information. **Ex. 1**, p. 3. Pursuant to ¶ I of the General Terms and Conditions of Employment section of the Employment Agreement, upon termination of his employment, Jones was obligated to deliver to New World all of the New World property and confidential information in his possession.

New World provided Jones with a company laptop computer. Jones agreed to return the laptop computer within twenty-four hours of the termination of his employment with New World. See **Ex. 2**; **Ex. 3**, Materne Aff., ¶ 5.

New World also provided Jones with confidential information to assist him in his sales position. Jones was given access to the company's ACT! marketing database ("ACT"), which contains New World's accumulation of information on customers and prospects, including sales leads; the names, addresses, phone numbers of and pertinent details about contact persons; purchase timeframes; and buying needs. New World also provided Jones with other confidential and proprietary information required for his job, such as its Price Lists and a Sales Playbook. New World's Price Lists, Sales Playbook, and other confidential information are clearly marked "Confidential." **Ex. 3**, Materne Aff., ¶¶ 6–8.

On January 6, 2006, New World notified Jones that it was terminating his employment on January 13, 2006, and requested that he immediately return all New World property and confidential information. Subsequently, despite repeated requests from New World (both verbally and in writing), Jones failed to turn in his company laptop computer, his New World price list, his New World sales playbook, and other New World property and confidential information in his possession. **Ex. 3**, Materne Aff., ¶ 12.

In early March 2006, New World learned that Jones had obtained employment with Defendant Tyler Technologies, Inc. ("Tyler"). Tyler is a direct competitor of New World. **Ex. 3**, Materne Aff., ¶ 13.

Tyler immediately assigned Jones to sell software products that compete with New World's products in Florida, Alabama, and Tennessee. Jones' Tyler territory includes many of the same customers and prospects, particularly in Florida, that Jones previously solicited on behalf of New World. **Ex. 3**, Materne Aff., ¶ 13.

In letters dated March 8 and March 16, New World notified Tyler of (a) the existence of the non-competition and non-disclosure provisions of the Employment Agreement, and

(b) Jones' failure to return the laptop computer and other New World materials in his possession. New World further informed Tyler that it considered Jones' employment with Tyler to be a violation of the non-competition provision of the Employment Agreement.[1]

In a letter dated March 23, 2006, H. Lynn Moore, Jr., Vice President and General Counsel for Tyler, responded to New World. Moore stated that Tyler had been unaware of Jones' retention of the laptop computer and other New World materials. Moore further stated that, at Tyler's instruction, Jones had shipped his laptop computer and other New World materials to New World the previous day. Moore asserted that, given Jones' tender of these materials, there was no longer any basis for concern that Jones would use or disclose New World's confidential information. See **Ex. 4**. As of the date of this Motion, Tyler has neither terminated Jones' employment nor reassigned him to a non-competitive position.

New World retained the services of Digital Forensics Corporation ("DFC") to examine Jones' laptop computer. Ex. 3, Materne Aff., ¶ 15. DFC's investigation is not yet complete. However, as of the present date, DFC has discovered that approximately 3,000 files were deleted from the laptop between March 20 and March 23; many of these files appear to be directly related to New World. Even more significantly, after the termination of his employment with New World, Jones created several files which are almost certainly reports from ACT. These reports were saved, and at least one report was copied onto a CD. See **Ex. 3**, Materne Aff., ¶¶ 16, 18; **Ex. 5**, Snow Aff., ¶ 7, 10, and Ex. **C**.

In an e-mail dated February 23, Skip Welch, Regional Vice President of Tyler's MUNIS Division, welcomed Jones to the company and asked him to prepare for upcoming meetings with him and other Tyler personnel.[2] Specifically, Welch said:

---

[1] See Complaint, Exs. 4 and 5.

> Here is what I would ask you to have prepared for me:
>
> - A forecast of current prospects you are aware of in Florida and Alabama, as well as any info that you may have on Tennessee prospects, which will be your third state.
>
> - Be able to discuss/show how you have canvassed for prospects in the past. I want to know what has worked for you, what type of programs you ran (mailers, telemarketing, seminars, etc.).
>
> - Be able to discuss how you responded to RFP's, what resources you have available to help, what you were responsible for, who answered checklists, etc. I want to get a feeling for how closely what you have been doing matches our model. [**Ex. 5**, Snow Aff., Ex. D.]

Welch also told Jones that he would have a Tyler laptop computer "all setup [sic] and ready to go" when Jones started work for Tyler on February 27, 2006. See **Ex. 5**, Snow Aff., Ex. D. However, even though Jones was apparently provided with a Tyler laptop computer, he continued to use his New World laptop computer as he began his sales efforts on behalf of Tyler. On February 28, Jones sent an e-mail to a representative of Florida Governmental. **Ex. 5**, Snow Aff., Ex. E.

Among the e-mails recovered by DFC are two sent by Jones on March 3 to representatives of North Miami, Florida, and Palm Beach, Florida, in which he solicited business on behalf of Tyler. North Miami and Palm Beach are New World prospects that Jones solicited as a New World sales representative. See **Ex. 3**, Materne Aff., ¶ 19; **Ex. 5**, Snow Aff., Exs. F, G.

On March 22, 2006, New World filed the instant lawsuit in Oakland Circuit Court, alleging breach of non-competition covenant, breach of non-disclosure covenant, tortious interference with contractual relations, violation of the Michigan Uniform Trade Secrets Act,

---

[2] Jones was scheduled to meet with five senior-level Tyler executives, including Tyler's president and CEO. See **Ex. 5**, Snow Aff., Ex. H. In the industry, it is extremely unusual for so many senior-level executives in a company the size of Tyler to interview prospective sales representatives. **Ex. 3**, Materne Aff., ¶ 20.

4

M.C.L. § 445.1901 *et seq*., and unfair competition. Defendants subsequently removed the lawsuit to this Court.

## ARGUMENT

In deciding whether to issue a preliminary injunction, a court must consider four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Worthy v. Michigan*, 142 F. Supp. 2d 806, 809 (E.D. Mich. 2000).

**I.     This Court should issue a preliminary injunction barring Defendants from both utilizing and disclosing New World's proprietary and confidential materials and/or information.**

The three essential elements of a cause of action for misappropriation of trade secrets in Michigan are (1) the existence of a trade secret, (2) acquisition of the trade secret in confidence, and (3) unauthorized use or disclosure. *Henkel Corp. v. Cox*, 386 F. Supp. 2d 898, 902 (E.D. Mich. 2005).

Under Michigan law, a trade secret "means information, including a formula, pattern, compilation, program, device, method, technique, or process," that (1) derives independent economic value from not being generally known to or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use, and (2) is the subject of reasonable efforts to maintain its secrecy. M.C.L. § 445.1902. A customer list may constitute a trade secret entitled to protection from misappropriation. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F. Supp. 2d 764, 775 (E.D. Mich. 1999). A court may enjoin actual or

threatened misappropriation of a trade secret and may compel affirmative acts to protect a trade secret.  M.C.L. § 445.1903.

Here, New World protects the secrecy of its confidential information.  Confidential information, such as New World's Price Book and Sales Playbook, is clearly labeled "Confidential."  Only those employees who require the information in the course of their New World duties are given password-restricted access to ACT, and such access is narrowly tailored to their employment needs.  In the case of sales representatives like Jones, the employee's access is limited to the information related to his particular territory.[3]  ACT can only be accessed through New World-issued equipment; therefore, unless an employee has made unauthorized copies, once his laptop is returned, his access to ACT ceases.  Furthermore, New World requires its employees to sign confidentiality agreements in which they agree not to use or disclose New World's confidential information, including customer and prospect lists.  **Ex. 3**, Materne Aff., ¶¶ 9–11.  In addition, Jones signed New World's standard form acknowledging that any files, data, or programs stored or created on the laptop are the exclusive property of New World Systems.  **Ex. 2**.  Thus, New World's confidential information is neither generally known nor readily ascertainable, and New World has demonstrated a likelihood of success on the question of whether the information at issue qualifies as a trade secret.[4]

Given the confidentiality provision of the Employment Agreement and the restriction of access to ACT, New World has demonstrated a likelihood of success on the question of whether Jones knew both that the information in ACT was New World's confidential information and

---

[3] Unlike the situation in *Hayes-Albion v. Kuberski*, 421 Mich. 170, 183; 364 N.W.2d 609 (1984), this is not a case in which the defendants acquired the information in the ACT database through independent research.

[4] Cf. *Webcraft Technologies, Inc. v. McCaw*, 674 F. Supp. 1039, 1046 (S.D.N.Y. 1987) (finding that customer names compiled through substantial research at the expense of a former employer, and which were kept confidential, were trade secrets).

that he had a duty not to use or disclose it.  Moreover, because of the nature of the information and the fact that Jones was a former employee of New World who entered into a confidentiality agreement, New World has demonstrated a likelihood of success on the question of whether Tyler knew or should have known that the information was acquired by improper means.[5]

Because there is evidence of both actual and threatened misappropriation of trade secrets, in the absence of injunctive relief, New World will likely suffer competitive losses and losses of customer goodwill as a result of Defendants' actions.  Such losses are inherently difficult to calculate and are sufficient to support an injunction.  See *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *Ran*, *supra* at 779.

Michigan law explicitly permits injunctions to issue in cases of threatened or actual misappropriation.  M.C.L. § 445.1903.  The public interests in protecting confidential information and in enforcing valid employment contracts and non-confidentiality agreements weigh in favor of issuing the preliminary injunction.  See *Henkel Corp.*, *supra* at 904.

**II.   This Court should enter a preliminary injunction barring Jones from violating the Non-Competition Clause of the Agreement.**

An agreement not to compete is permissible under Michigan law as long as it is (1) reasonably drawn as to duration, geographical scope, and line of business, and (2) protects the legitimate business interests of the party seeking its enforcement.  *Lowry Computer Products v. Head*, 984 F. Supp. 1111, 1115-1116 (E.D. Mich. 1997); see M.C.L. § 445.774a(1).  New World will suffer immediate and irreparable harm if Jones violates the non-competition provision of the Employment Agreement.

---

[5] The documents recovered from Jones' laptop computer include a Confidential Information Agreement that Tyler apparently required him to execute.  See **Ex. 5**, Snow Affidavit, Ex. I.  The terms of Tyler's confidentiality agreement are substantially similar to the confidentiality section of the Employment Agreement.

7

Jones has not returned his New World Price Lists and Sales Playbook. DFC's reports strongly indicate that, after Jones became a Tyler sales representative, his laptop computer was used to access and copy information from ACT. **Ex. 3**, Materne Aff., ¶¶ 16, 18, 21; **Ex. 5**, Snow Aff., ¶ 10 and Exs. A–C. This evidence demonstrates that Jones has no intention of abiding by the non-confidentiality provision of the Employment Agreement.[6] Even if this Court orders the return of all of the New World materials that he wrongfully appropriated, Jones will inevitably utilize or rely on New World's confidential and proprietary information in the course of competing with New World as a Tyler sales representative, calling on many of the same customers and prospective customers as he attempts to sell them software products and services similar to those he sold for New World. See M.C.L. § 445.1903; *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). During the course of Jones' eight-year affiliation with New World, he acquired knowledge of its sales practices, pricing strategies, and confidential customer information, and New World has a legitimate interest in restraining him from using that knowledge to sell Tyler's competing products. Cf. *Emerson Electric Co. v. Rogers*, 418 F.3d 841, 845 (8th Cir. 2005).

Given the complexities and uncertainties of developing a client base, unless injunctive relief is granted now, the impact of Jones' breaches on New World simply cannot be measured. See *Ran*, *supra* at 779. New World is entitled to the benefit of its bargain which prevents Jones from competing within four years of leaving the company. To the extent Jones has already done so, in clear contravention of the Employment Agreement, Jones cannot be allowed to benefit from his wrongdoing. See *id*.

---

[6] Indeed, the letter from Moore indicates that Jones misrepresented to Tyler that he had returned all of New World's confidential information. **Ex. 4**.

8

Should this Court finds the non-competition provision to be unreasonable in any respect, Michigan law permits it to limit the provision to render it reasonable in light of the circumstances in which it was made and specifically enforce the non-competition provision as limited. See M.C.L. § 445.774a.

New World has no adequate remedy at law and is likely to prevail on the merits of this action because it seeks only to enforce the non-competition provision in the Employment Agreement, which is valid and reasonable. The harm to Jones by the issuance of injunctive relief will be minimal because Jones already agreed to the relief sought. Finally, the public interest would be served by the issuance of the injunction because the public policy of Michigan encourages the enforcement of covenants not to compete. See M.C.L. § 445.774a.

**III. This Court should enter a preliminary injunction barring Tyler from tortious interference with the contractual relations between New World and Jones and unfair competition.**

Based on the facts set forth above, this Court should enjoin Tyler from its tortious interference with the contractual relations between New World and Jones and unfair competition. See *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.*, 788 F. Supp. 1438, 1447 (E.D. Mich. 1992); *Clipper Belt Lacer Co. v. Detroit Belt Lacer Co.*, 223 Mich. 399, 407; 364 N.W.2d 609 (1984). New World has no adequate remedy at law and, in the absence of injunctive relief, will likely suffer competitive losses and losses of customer goodwill as a result of Tyler's actions.

**IV. This Court should order Defendants, at their expense, to allow a third party to examine their computer systems to determine whether any of New World's confidential and proprietary information is present.**

New World has presented evidence that Jones wrongfully used his New World laptop compute to access and copy its confidential ACT database after he became a Tyler employee.

9

Given that New World and Tyler compete directly in selling software to state and local governments, it would be inequitable to allow Jones and Tyler to retain any of New World's confidential information. Accordingly, New World requests that this Court order Defendants, at Defendants' expense, to allow a third party to examine the computer systems used by Jones and the Tyler executives with whom he interviewed, Robert Sansone, Skip Welch, Jim Hurley, Dick Peterson, and John Marr, Jr., to determine whether any of New World's confidential and proprietary information is present.[7] See *Henkel Corp.*, *supra* at 899.

## RELIEF REQUESTED

Plaintiffs request that this Court:

A. Enter a preliminary injunction enjoining Jones from violating the non-competition provision of the Employment Agreement;

B. Enter a preliminary injunction enjoining Defendants from disclosing New World's proprietary and confidential materials and/or information;

C. Enter a preliminary injunction enjoining Tyler from tortiously interfering with New World's contractual relations and unfair competition;

D. Order Defendants, at Defendants' expense, to allow a third party to examine the computer systems used by Jones and Tyler employees Robert Sansons, Skip Welch, Jim Hurley, Dick Peterson, and John Marr, Jr., to determine whether any of New World's confidential and proprietary information is present; and

E. Award New World its actual attorney fees and costs incurred in bringing this Motion and grant New World any other relief that the Court determines is appropriate under the circumstances.

SAFFORD & BAKER, PLLC

Dated: April 26, 2006  By:  s/*Mary Ann Hart*
Ralph R. Safford (P24633)
Mary Ann Hart (P48994)
Attorneys for Plaintiff

Claudia V. Babiarz (P36230)
Co-Counsel for Plaintiff

---

[7] See **Ex. 5**, Snow Aff., Ex. H.

**PROOF OF SERVICE**

I hereby certify that on **April 26, 2006**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Daniel J. Bernard and William E. Altman.

                                s/Mary Ann Hart (P48994)
                                Safford & Baker, PLLC
                                40900 Woodward Avenue, Suite 275
                                Bloomfield Hills, Michigan 48304
                                (248) 646-9100
                                mhart@saffordbaker.com