UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW WORLD SYSTEMS CORPORATION,

        Plaintiff,

v.

CHAUNCEY JONES and TYLER
TECHNOLOGIES, INC.,

        Defendants.

Case No. 2:06-cv-11603
Hon. Denise Page Hood

Magistrate Judge Virginia M. Morgan

| | |
|---|---|
| SAFFORD & BAKER, PLLC<br>Ralph R. Safford (P24633)<br>Mary Ann Hart (P48994)<br>Attorneys for Plaintiff<br>40900 Woodward Avenue, Suite 275<br>Bloomfield Hills, Michigan 48304<br>(248) 646-9100 | VERCRUYSSE, MURRAY & CALZONE, PC<br>Daniel J. Bernard (P34225)<br>William E. Altman (P52788)<br>Attorneys for Defendants<br>31780 Telegraph Road, Suite 200<br>Bingham Farms, Michigan 48025<br>(248) 540-8019 |
| Claudia V. Babiarz (P36230)<br>Co-Counsel for Plaintiff<br>888 W. Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 269-1000 | |

## AFFIDAVIT OF DAVID MATERNE

David Materne, being first duly sworn, states:

1. I am of full age, am making this affidavit upon personal knowledge, and can testify competently to the facts set forth below.

2. I am the Vice President of Finance and Administration for New World Systems Corporation ("New World"), the plaintiff in the above-captioned matter.

3. From September 1998 to January 2006, New World employed Defendant Chauncey Jones as a sales representative.

4.  New World assigned Jones to solicit sales of New World products and services in Florida, Alabama, South Carolina, and Mississippi. For a period of time during his employment, Jones' territory also included Georgia and North Carolina.

5.  New World provided Jones with a company laptop computer. As with all New World employees who are issued company laptop computers, New World required Jones to sign an agreement obligating him to return the laptop computer to New World immediately upon termination of his employment.

6.  With the company laptop computer, Jones was able to access New World's ACT! marketing database, which contains New World's accumulation of information on customers and prospective customers, including sales leads; the names, addresses, phone numbers of and pertinent details about contact persons; purchase timeframes; and buying needs. While some of the information in the ACT! marketing database was obtained from various public sources, the compilation and organization of this public information in the ACT! marketing database is the result of thousands of hours of work on the part of New World employees. Other information in the ACT! marketing database constitutes information related to or acquired through the efforts of New World employees which is not in the public domain.

7.  New World also provided Jones with other confidential and proprietary information required for his job, such as its Price Lists and a Sales Playbook. New World's Price Lists, Sales Playbook, and other confidential information are clearly marked "Confidential." New World's Price List and Sales Playbook are labeled "Confidential."

8. Reports created from New World's ACT! marketing database are labeled "Confidential."

9. Only those employees who require the information in the course of their New World duties are given password-restricted access to New World's ACT! marketing database, and such access is narrowly tailored to their employment needs. In the case of sales representatives like Jones, the employee's access is limited to the information related to his particular territory. New World's ACT! marketing database can only be accessed through New World-issued equipment; therefore, unless an employee has made unauthorized copies, once his laptop is returned, his access to its ACT! marketing database ceases.

10. New World requires its employees to sign confidentiality agreements in which they agree not to use or disclose New World's confidential information.

11. New World limits access to its confidential materials to those employees who require them to carry out their job responsibilities for New World.

12. On January 6, 2006, New World notified Jones that it was terminating his employment on January 13, 2006, and requested that he immediately return all New World property and confidential information. Subsequently, despite repeated requests from New World (both verbally and in writing), Jones failed to turn in his company laptop computer, his New World price list, his New World sales playbook, and other New World property and confidential information in his possession.

13. In early March 2006, New World learned that Jones had obtained employment with Defendant Tyler Technologies, Inc. ("Tyler"). Tyler is a direct

3

competitor of New World. The territory that Tyler has assigned to Jones includes many of the same customers and prospective customers, particularly in Florida, that Jones previously solicited on behalf of New World.

14. On March 23 2006, New World finally received from Jones the company laptop computer that had been provided to him.

15. On April 4, 2006, I retained Digital Forensics Corporation ("DFC") on behalf of New World to examine the company laptop computer issued to Jones, which had been returned to New World in March 2006.

16. I have reviewed DFC's reports concerning its examination of Jones' laptop computer. The names and/or content of many of the files created and/or accessed on Jones' laptop computer in March 2006, such as "Florida Cities," "FL Contact Report," "FL Phone List," "FL List without population," and "AL Prospect Listing by Population," are consistent with reports created from New World's ACT! marketing database.

17. DFC's report states that 3,491 files or folders were deleted between January 1, 2006, and March 23, 2006, with approximately 3,000 of the deletions occurring between March 20 and March 23. I have reviewed DFC's list of deleted documents and estimate that at least 2,500 of the deleted documents appear to be directly related to New World.

18. I have reviewed the file recovered from Jones' laptop computer by DFC entitled "Florida Contact Report by Population.rtf" (see DFC Report dated 04/6/06) and compared it to the data in New World's current marketing database. In both the file recovered by DFC and New World's marketing database, the job title for Eric Rupert of

4

Coconut Creek, Florida, contains the same obvious typographical error, namely, "Informagtion Systems Director."

19. I have reviewed the e-mails recovered from the New World laptop used by Jones computer by DFC which are attached as Exhibits F and G to the Affidavit of Robert Snow. The recipients of these e-mails are New World prospects that Jones solicited as a New World sales representative.

20. I have reviewed the e-mails recovered from the New World laptop used by Jones computer by DFC which is attached as Exhibit H to the Affidavit of Robert Snow. In the e-mail, a Tyler Human Resources Specialist informs Jones that he will be interviewing with Tyler's HR Director, the VP of Eastern Region Sales, the VP of Sales, the President, and the CEO. In the industry, it is extremely unusual in a company the size of Tyler for five senior-level executives, including the company president and its CEO, to interview prospective sales representatives.

21. As of the present date, Jones has not returned his New World Price List and his New World Sales Playbook.

Dated: April 26, 2006

_____
David Materne

Subscribed and sworn to before me
this ____ day of April 2006.

BOB KAUFMAN
NOTARY PUBLIC STATE OF MICHIGAN
OAKLAND COUNTY
MY COMMISSION EXP. JULY 1, 2006

5