**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NEW WORLD SYSTEMS CORPORATION,

                     Plaintiff,      Case No. 2:06-cv-11603
                                          Hon. Denise Page Hood

v.

CHAUNCEY JONES and TYLER      Magistrate Judge Virginia M. Morgan
TECHNOLOGIES, INC.,

                     Defendants.

---

| | |
|---|---|
| SAFFORD & BAKER, PLLC<br>Ralph R. Safford (P24633)<br>Mary Ann Hart (P48994)<br>Attorneys for Plaintiff<br>40900 Woodward Avenue, Suite 275<br>Bloomfield Hills, Michigan 48304<br>(248) 646-9100 | VERCRUYSSE, MURRAY & CALZONE, PC<br>Daniel J. Bernard (P34225)<br>William E. Altman (P52788)<br>Attorneys for Defendants<br>31780 Telegraph Road, Suite 200<br>Bingham Farms, Michigan 48025<br>(248) 540-8019 |
| Claudia V. Babiarz (P36230)<br>Co-Counsel for Plaintiff<br>888 W. Big Beaver Road, Suite 600<br>Troy, Michigan 48084<br>(248) 269-1000 | |

---

**FIRST AMENDED COMPLAINT
AND REQUEST FOR INJUNCTIVE RELIEF**

New World Systems Corporation ("New World"), by and through its attorneys, Safford & Baker, PLLC, and Claudia V. Babiarz, complains against Defendants Chauncey Jones and Tyler Technologies, Inc. ("Tyler") as follows:

1. New World is a corporation incorporated under the laws of the State of Michigan which maintains its principal place of business in Oakland County, Michigan.

2. Defendant Jones is an individual residing in Hillsborough County, Florida.

3. Defendant Tyler is a corporation incorporated under the laws of the State of Delaware which does business in Michigan.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. This Court has also subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because New World is alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

## BACKGROUND

6. New World is a public sector software company that develops, markets, and supports integrated standard software solutions for use by local and state governments. New World's primary (but not exclusive) market consists of cities and counties within the United States.

7. From September 1998 to January 2006, New World employed Defendant Jones as a sales representative.

8. On September 21, 1998, New World and Defendant Jones entered into an Employment Agreement. Relevant excerpts from the Employment Agreement are attached to this First Amended Complaint as **Exhibit 1**.

9. The Employment Agreement contains a Non-Competition provision pursuant to which Jones agreed that, in the event that he was employed with New World for six or more years, he would not compete with New World for a period of four years after the termination of his employment with New World. **Exhibit 1**, p. 2.

10. The Employment Agreement contains a Non-Disclosure provision pursuant to which Jones agreed that he would not

> directly or indirectly use, disclose or distribute information or property held confidential by New World including, without limitation, contracts, proprietary information, trade secrets, Customer lists, prospect lists, employee lists, business practices, methods, inventions, discoveries, mailing lists, pricing information, sales records, price lists, contracts, forecasts, computer programs, formulas, technical information, and/or other tangible or intangible property relating to New World's business. [**Exhibit 1**, p. 3.]

11. New World assigned Defendant Jones to solicit sales of New World products and services in Florida, Alabama, Mississippi, and South Carolina. For a period of time during his employment, Defendant Jones' territory also included Georgia and North Carolina.

12. New World provided Defendant Jones with New World's confidential information to assist him in his sales position. Among other things, Jones was given access to New World's ACT! marketing database for his sales territory, which contains New World's comprehensive compilation of information on its customers and prospects accumulated by its employees. New World also provided Jones with its price lists and sales playbook.

13. In addition, New World provided Defendant Jones with a company laptop computer and other New World property and equipment.

14. As with all New World employees who are issued company laptop computers, New World required Jones to sign an agreement obligating him to return the laptop computer to New World immediately upon termination of his employment. See **Exhibit 2**.

15. Most, if not all, of the documents containing confidential and highly sensitive information which were provided to Defendant Jones are marked "Confidential." See, e.g., **Exhibit 3** (cover page of New World Price List).

16. In January 2006, New World terminated Defendant Jones' employment.

17. Pursuant to ¶ I of the General Terms and Conditions of Employment section of the Employment Agreement, upon termination of his employment, Defendant Jones was obligated to deliver to New World all of the New World property and confidential information in his possession.

18. Following the termination of his employment with New World, despite repeated requests from New World (both verbally and in writing), Defendant Jones failed to promptly return to New World his company laptop computer, projector, and other New World property in his possession.

19. Following the termination of his employment with New World, despite repeated requests from New World (both verbally and in writing), Defendant Jones failed to promptly return to New World the confidential information in his possession, including but not limited to New World price books and/or price lists; New World's Sales Playbook; customer information; customer surveys; customer assignment lists; budgets; telephone and/or employee lists; New World's policies and procedures; New World

proposals submitted to prospects and/or customers; sales forecasts; territory reviews; sales pipeline information; database and other confidential information stored on the New World laptop computer; as well as other confidential information that is clearly marked as such.

20. Defendant Tyler is a public sector software company that directly competes with New World.

21. On or around February 13, 2006, Defendant Jones interviewed with five senior-level Tyler executives, including Dick Peterson, Tyler's president; John Marr, Jr., Tyler's CEO; and Jim Hurley, Tyler's Vice President of Sales.

22. Thereafter, Defendant Jones accepted Defendant Tyler's offer of employment as a sales representative for Tyler's MUNIS division.

23. Tyler's MUNIS division directly competes with New World.

24. In an e-mail dated February 23, Skip Welch, Regional Vice President of Tyler's MUNIS Division, welcomed Defendant Jones to the company and asked him to prepare for upcoming meetings with him and other Tyler personnel. Among other things, Welch asked Defendant Jones (a) for information on current prospects that he was aware of in Florida, Alabama, and Tennessee; (b) to be able to "discuss/show how you have canvassed for prospects in the past;" and (c) to be able to discuss his sales procedures and the resources used during his time as a New World sales representative.

25. Upon information and belief, at the commencement of his employment with the company, Defendant Tyler provided Defendant Jones with a laptop computer.

26. Nevertheless, Defendant Jones continued to use the laptop computer issued to him by New World.

27. On February 28, 2006, Jones used the New World laptop computer to send an e-mail to a representative of Florida Governmental.

28. On March 3, 2006, Jones used the New World laptop computer to send e-mails to representatives of North Miami, Florida, and Palm Beach, Florida, in which he solicited business on behalf of Tyler. North Miami and Palm Beach are New World prospects that Jones solicited as a New World sales representative.

29. After the termination of his employment with New World, Jones created reports from New World's ACT! marketing database which he saved and, in at least one instance, copied to a CD.

30. In early March 2006, New World learned that Defendant Jones had obtained or was seeking employment with Defendant Tyler.

31. On March 8, 2006, David Materne, New World's Vice President of Finance & Administration, notified Defendant Tyler that Defendant Jones had executed a Non-Competition Agreement with New World. Materne further stated that New World would consider Defendant Jones' employment with Defendant Tyler to be a violation of the parties' Non-Competition Agreement. See **Exhibit 4**.

32. On March 10, 2006, a New World employee attended a pre-proposal conference for the city of Palm Beach, Florida, a prospective customer.

33. Defendant Jones was at the Palm Beach conference and introduced himself as a sales representative for Defendant Tyler. After the conference, Defendant

6

Jones told the New World employee that he was selling software for Defendant Tyler, but refused to disclose which Tyler division he was representing.

34. On March 16, 2006, New World's general counsel, Claudia Babiarz, notified the general counsel for Defendant Tyler of (a) the existence of the Non-Competition and Non-Disclosure provisions of the Employment Agreement, and (b) New World's legitimate concerns that Defendant Jones will inevitably use and disclose New World's confidential information in his new position as a sales representative for Defendant Tyler. See **Exhibit 5**.

35. In a letter dated March 23, 2006, H. Lynn Moore, Jr., Vice President and General Counsel for Tyler, responded to New World. Moore stated that Tyler had been unaware of Jones' retention of the laptop computer and other New World materials. Moore further stated that, at Tyler's instruction, Jones had shipped his New World laptop computer and other New World materials to New World the previous day. Moore asserted that, given Jones' tender of these materials, there was no longer any basis for concern that Jones would use or disclose New World's confidential information. See **Exhibit 6**.

36. Upon information and belief, after being told by Defendant Tyler to return New World's laptop computer, Defendant Jones deleted approximately 3,000 files from the laptop computer between March 20 and March 23, 2006. Many of the deleted files were directly related to New World.

37. As of the date of the filing of this First Amended Complaint, Defendant Tyler has not agreed to reassign Defendant Jones to a non-competitive division or to terminate his employment as a sales representative.

38. Upon information and belief, Defendant Jones is calling on many of the same customers and prospective customers for Defendant Tyler that he called on as a sales representative for New World, selling products and services in direct competition to those offered by New World.

39. As of the date of the filing of this First Amended Complaint, Defendant Jones has not returned all of the New World confidential information that had been provided to him, including but not limited to his New World price lists and sales playbook.

### COUNT I – BREACH OF NON-COMPETITION COVENANT [DEFENDANT JONES]

40. New World incorporates by reference ¶¶ 1–39 of this First Amended Complaint.

41. The Non-Competition provision of the Employment Agreement protects New World's reasonable competitive business interests and is reasonable as to duration, geographical area, and type of employment restricted.

42. Defendant Jones' actions and inactions listed above constitute breaches of the Non-Competition provision of the Employment Agreement.

43. As a direct and proximate result of these breaches, New World has suffered or will suffer damages that were reasonably foreseeable by Defendant Jones, including lost profits.

44. Pursuant to § J(1) of the General Terms and Conditions of Employment section of the Employment Agreement, New World has the right to injunctive relief and specific enforcement of the Non-Competition provision.

45. New World has incurred damages as result of Defendant Jones' actions. In addition to any other damages to which New World is entitled, pursuant to § J(2) of the General Terms and Conditions of Employment section of the Employment Agreement, Defendant Jones is deemed to have purchased the goodwill of New World, as set forth in § J(2), through his breach of the Non-Competition provision.

46. Pursuant to § J(3) of the General Terms and Conditions of Employment section of the Employment Agreement, New World is entitled to recover its actual costs and attorney fees from Defendant Jones.

### COUNT II – BREACH OF NON-DISCLOSURE COVENANT [DEFENDANT JONES]

47. New World incorporates by reference ¶¶ 1–46 of this First Amended Complaint.

48. In the conduct of its business, New World has restricted access to its trade secrets and its confidential and proprietary information to certain select employees and to a limited number of others with whom it maintains non-disclosure agreements or confidential relationships.

49. Defendant Jones' failure to comply with his contractual obligation to return his New World laptop and any other New World property and confidential information in his possession is evidence of bad faith.

50. Defendant Jones's actions in accessing New World's New World's ACT! marketing database and copying data from it to a CD, after the termination of his New World employment, is additional evidence of bad faith.

51. New World's confidential and proprietary information will be useful to Defendants and provide them with an unfair competitive advantage as they compete with New World.

52. Unless restrained, it will be virtually impossible for Defendant Jones to avoid violating the Non-Disclosure provision of the Employment Agreement by (a) disclosing New World's trade secret, confidential, and proprietary information to Defendant Tyler, and (b) using such information in his employment with Defendant Tyler as he attempts to sell products and services that compete with New World's products and services, particularly since Defendant Jones is selling competitive products and services within the same territory that he worked in as a New World sales representative.

53. If New World's confidential and proprietary information is used or divulged by Defendant Jones, or if Defendant Tyler is permitted to utilize this information, Defendant Tyler will avoid expending the substantial time, money, and material required to develop the information on its own.

54. If Defendant Jones violates the Non-Disclosure provision of the Employment Agreement by disclosing New World's trade secret, confidential, and proprietary information to Defendant Tyler and using such information in his employment with Defendant Tyler, New World will suffer irreparable harm because its

competitive advantage will be undermined, and damages will be extremely difficult to prove.

55. Pursuant to § J(1) of the General Terms and Conditions of Employment section of the Employment Agreement, New World has the right to injunctive relief and specific enforcement of the Non-Disclosure provision.

56. New World has incurred damages as result of Defendant Jones' actions. In addition to any other damages to which New World is entitled, pursuant to § J(2) of the General Terms and Conditions of Employment section of the Employment Agreement, Defendant Jones is deemed to have purchased the goodwill of New World, as set forth in § J(2), through his breach of the Non-Disclosure provision.

57. Pursuant to § J(3) of the Employment Agreement, New World is entitled to recover its actual costs and attorney fees from Defendant Jones.

### COUNT III – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS [DEFENDANT TYLER]

58. New World incorporates by reference ¶¶ 1–57 of this First Amended Complaint.

59. Defendant Tyler is aware that New World and Defendant Jones executed a Non-Competition Agreement.

60. The actions and inactions listed above on the part of Defendant Tyler constitute intentional interference with the contractual relations between New World and Defendant Jones.

61. The actions of Defendant Tyler were intended to, and did, interfere with the contractual relations between New World and Defendant Jones, causing their breach.

62. As a direct and proximate result of this wrongful interference, New World has suffered or will suffer damages that were reasonably foreseeable by Defendant Tyler, including lost profits.

### COUNT IV– MICHIGAN UNIFORM TRADE SECRETS ACT
### [DEFENDANT JONES AND DEFENDANT TYLER]

63. New World incorporates by reference ¶¶ 1–62 of this First Amended Complaint.

64. New World's confidential and proprietary information, including but not limited to the information stored on the laptop computer that New World provided to Defendant Jones, constitutes "trade secrets" as defined in M.C.L. 445.1902.

65. Defendants' actions, as set forth in this First Amended Complaint, constitute misappropriation of New World's trade secrets.

66. Pursuant to M.C.L. 445.1903, actual or threatened misappropriation of trade secrets may be enjoined.

67. Pursuant to M.C.L. 445.1904, New World is entitled to recover damages for Defendants' misappropriation of its trade secrets.

### COUNT V – UNFAIR COMPETITION
### [DEFENDANT JONES AND DEFENDANT TYLER]

68. New World incorporates by reference ¶¶ 1–67 of this First Amended Complaint.

69. The conduct and acts set forth in the preceding paragraphs demonstrate a continuing pattern of activities and a course of conduct by Defendants to unfairly gain a competitive edge over New World, to infringe New World's proprietary rights, and to engage in unfair competition with New World.

70. As a direct and proximate result of Defendants' conduct, New World has suffered or will suffer damages that were reasonably foreseeable by Defendants, including lost profits.

71. If not restrained, Defendants' actions will cause irreparable harm to New World.

### COUNT VI – COMPUTER FRAUD AND ABUSE ACT
### [DEFENDANT JONES AND DEFENDANT TYLER]

72. New World incorporates by reference ¶¶ 1–71 of this First Amended Complaint.

73. The laptop computer provided by New World to Defendant Jones is a "protected computer," as set forth in 18 U.S.C. § 1030(e)(2)(B), because it was used in interstate commerce and communication.

74. Defendant Jones' accessing of the laptop computer after January 13, 2006, was unauthorized.

75. Defendant Jones was acting as an agent of Defendant Tyler at the time that he accessed the laptop computer without authorization.

76. Defendant Jones' access of the laptop computer after January 13, 2006, was intentionally done for the purpose of obtaining New World's confidential information for Defendants' commercial advantage.

77. As a direct and proximate result of Defendants' conduct, New World has suffered damages in excess of $5,000, including but not limited to the cost of investigating Defendant Jones' unauthorized access of the laptop computer.

## COUNT VI – INJUNCTIVE RELIEF
### [DEFENDANT JONES AND DEFENDANT TYLER]

78. New World incorporates by reference ¶¶ 1–77 of this First Amended Complaint.

79. New World will suffer immediate and irreparable harm if Defendants engage in unauthorized use of New World's trade secrets and confidential and proprietary information.

80. Unless Defendants are enjoined from disclosing and/or utilizing New World's trade secrets and confidential and proprietary information, New World will be irreparably harmed by (a) the disclosure of trade secrets and other confidential information that is solely the property of New World, and (b) loss of client confidence, goodwill, and business reputation.

81. New World has no adequate remedy at law, as the injury suffered by Plaintiff as a result of Defendants' actions will be difficult, if not impossible, to determine monetarily.

82. New World is likely to prevail on the merits of this action as demonstrated by the facts set forth in this First Amended Complaint.

83. Pursuant to *Thermatool Corp. v. Borzym*, 227 Mich. App. 366, 374-375; 575 N.W.2d 334 (1998), New World is entitled to the extension of the Non-Competition provision of the Employment Agreement for a period equal to the period that Defendant Jones has competed with New World in breach of the provision.

## RELIEF REQUESTED

Plaintiffs request that this Court:

A. Enter a preliminary injunction and, after trial, a permanent injunction, enjoining Defendant Jones from violating the Non-Competition provision of the Employment Agreement;

B. Enter a preliminary injunction and, after trial, a permanent injunction, enjoining Defendants and their employees, agents, attorneys, and other representatives, and all persons in active concert or participation with any of the foregoing, from disclosing and/or utilizing New World's trade secrets and proprietary and confidential materials and/or information;

C. Order the extension of the Non-Competition provision of the Employment Agreement for a period equal to the period that Defendant Jones has competed with New World in breach of the provision;

D. Award New World damages in an amount to be determined by this Court;

E. Order Defendant Jones to reimburse New World for the actual attorney fees and costs incurred in bringing these claims pursuant to § J(3) of the General Terms and Conditions of Employment section of the Employment Agreement; and

F.  Grant New World any other relief that the Court determines is appropriate under the circumstances.

Respectfully submitted,

SAFFORD & BAKER, PLLC

Dated: May 10, 2006          By: *Mary Ann Hart*
                             Ralph R. Safford (P24633)
                             Mary Ann Hart (P48994)
                             Attorneys for New World
                             40900 Woodward Avenue, Suite 275
                             Bloomfield Hills, Michigan 48304
                             (248) 646-9100


                             Claudia V. Babiarz (P36230)
                             Co-Counsel for New World
                             888 W. Big Beaver Road, Suite 600
                             Troy, Michigan 48084
                             (248) 269-1000

---

**PROOF OF SERVICE**

I hereby certify that on **May 10, 2006**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Daniel J. Bernard and William E. Altman.

s/Mary Ann Hart (P48994)
Safford & Baker, PLLC
40900 Woodward Avenue, Suite 275
Bloomfield Hills, Michigan 48304
(248) 646-9100
mhart@saffordbaker.com