UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW WORLD SYSTEMS CORPORATION,

                Plaintiff,

vs.

CHAUNCEY JONES and
TYLER TECHNOLOGIES, INC.,

                Defendants.

Case No. 06-11603
Honorable Denise Page Hood

---

**DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION REGARDING NON-COMPETITION**

**CERTIFICATE OF SERVICE**

**VERCRUYSSE MURRAY & CALZONE, P.C.**
**Daniel J. Bernard (P34225)**
    **dbernard@vmclaw.com**
**William E. Altman (P52788)**
    **waltman@vmclaw.com**
**31780 Telegraph Road, Suite 200**
**Bingham Farms, Michigan  48025**
**(248) 540-8019**
**Attorneys for Defendants**

**Table of Contents**

**Page**

Statement of Questions Presented ............................................... ii

Index of Authorities ............................................................. iii

Introduction ................................................................... 1

Statement of Facts ............................................................. 1

Argument

I.   PLAINTIFF IS NOT ENTITLED TO
     A PRELIMINARY INJUNCTION            ..................................   4

     A.   Standards For Granting Injunctive Relief        .................   4

     B.   Plaintiff Does Not Meet The Requirements
          For A Preliminary Injunction        ...................................   6

          1.   Plaintiff Cannot Demonstrate A Strong
               Likelihood of Success On The Merits      .................   8

               a.   Plaintiff cannot show that the
                    non-competition agreement
                    protects its reasonable competitive
                    business interests     ...................................   8

               b.   The non-competition agreement
                    is unreasonable in duration      .................   13

               c.   The non-competition agreement
                    is unreasonable in geographic scope    .........   13

               d.   The non-competition agreement is
                    unreasonable in the type of employment
                    or line of business in which Defendant
                    Jones is prohibited from engaging     .........   13

i

3.      The Equities Do Not Favor Injunctive Relief      .........      17

Conclusion   ...................................................................   18

Certificate of Service      ...............................................   19

ii

I.      Should the Court grant a preliminary injunction based on a non-competition agreement where Plaintiff cannot demonstrate a strong likelihood of success on the merits because (a) Plaintiff cannot show that the non-competition agreement protects its reasonable competitive business interests, (b) the non-competition agreement is unreasonable in duration, (c) the non-competition agreement is unreasonable in geographic scope, and (d) the non-competition agreement is unreasonable in the type of employment or line of business in which Defendant Jones is prohibited from engaging?

II.     Should the Court grant a preliminary injunction based on a non-competition agreement where Plaintiff cannot demonstrate irreparable harm?

III.    Should the Court grant a preliminary injunction based on a non-competition agreement where the equities do not favor injunctive relief?

**Index of Authorities**

**Page**

### Cases

*A Complete Home Care Agency v Gutierrez,*
    (2004 WL 1459450, June 29, 2004) .............................................   15

*Bristol Window and Door, Inc. v Hoogenstyn,*
    250 Mich App 478, 650 NW2d 670 (2002) .....................................   6

*CMI Int'l, Inc v Intermet Int'l Corp,* 251 Mich App 125 (2002) .................   9

*Detroit Newspaper Publishers Ass'n v Detroit Typographical Union No. 18,*
    471 F2d 872 (6th Cir. 1972) ........................................................   5, 16

*Follmer, Rudzewicz & Co., PC v Kosco,*
    420 Mich 394, 362 NW2d 676 (1984)     ....................................   7, 10

*Gateway 2000, Inc v Kelley,* 9 F Supp2d 790 (ED Mich 1998)     ..................   10

*Godlan, Inc v Whiteford and DCL, Inc,*
    (2003 WL 1094114, March 11, 2003) ..........................................   11

*Kelsey-Hayes Co v Maleki,* 765 F Supp 402 (ED Mich 1991) ......................   7

*Leach v Ford Motor Co.,* 299 F Supp 2d 763 (ED Mich 2004)     ..................   5

*Leary v Daeschner,* 228 F3d 729 (6th Cir. 2000)     .....................................   5

*Mazurek v Armstrong,* 520 US 968, 117 S Ct 1865, 138 L Ed 2d 162 (1997) ......   5

*Neveaux v Webcraft Technologies, Inc,* 921 F Supp 1568 (ED Mich 1996).........   5,6

*Ram Products Co, Inc v Chauncey,* 967 F Supp 1071 (ND Ind 1997) ..............   7

*Rock and Roll Hall of Fame & Museum, Inc. v Gentile Prods.,*
    134 F3d 749 (6th Cir. 1998) .......................................................   4

*Sampson v Murray,* 415 US 61, 94 S Ct 937, 39 L Ed 2d 166 (1974) ...............   16

*Thermatool Corporation v Borzym,*
    227 Mich App 366, 575 NW2d 334 (1998)     …………………………..     17

*United Rentals (North America), Inc. v Keizer,*
    202 F Supp 2d 727 (WD Mich 2002)     …………………………………     7, 15

## **Statutes and Rules**

Fed. R. Civ. P. 65     ………………………………………………………     4

MCL 445.772     ………………………………………………………     6

MCL 445.774a     ………………………………………………………     6

Chapter 119.01 et seq., Florida Statutes     …………………………………     9

Introduction

By order, the Court has provided that the initial hearing on Plaintiff's motion for preliminary injunction will address Plaintiff's attempt to enforce the non-competition provisions of Defendant Chauncey Jones' employment agreement with Plaintiff New World Systems. Accordingly, this response focuses solely on those issues pertaining to Plaintiff's non-competition claims.[1]

### Statement of Facts

*Procedural Posture*

Plaintiff New World Systems sued its former employee, Chauncey Jones, and Jones' new employer, Tyler Technologies, Inc., alleging that Jones has breached his employment agreement. New World and Tyler compete in providing software applications and support to governmental agencies.

Plaintiff's complaint was filed on March 22, 2006, in the Oakland County Circuit Court and removed to this Court on April 4. On April 17, counsel met for settlement discussions. Defendants responded to Plaintiff's initial settlement demands on April 20, 2006.

---

[1] Plaintiff also seeks injunctive relief as to the alleged disclosure of confidential information, which will be addressed after the expedited discovery period set by the Court. Plaintiff's other requests are properly the subject of discovery requests or otherwise improper for a preliminary injunction motion.

Defendants filed a Motion to Change Venue, or Alternatively to Dismiss This Action Against Defendant Chauncey Jones on April 21.    Plaintiff responded by filing a motion for a preliminary injunction.

The Court has set a scheduling conference for May 30.

*Background*

Chauncey Jones was employed by Plaintiff New World Systems as a sales representative.  His responsibilities involved new sales, in which he would attempt to sell New World products to prospective customers.  Once a sale was made, the customer would then be turned over to another salesperson to service the account.  Although Jones occasionally had contact with existing customers, these contacts were irregular and tended to be informal.  His sales territory was primarily Florida, with two or three other southeastern states.  Jones lives and works in Florida.

In early January 2006, Plaintiff advised Jones that it was terminating him for poor sales and for not meeting his quota.  He then was asked by Plaintiff if he would be interested in a new position Plaintiff was creating, and Plaintiff brought Jones to Michigan to interview for it.  Later, Plaintiff told Jones that he would not be hired into the new position.

After his termination, Jones did not immediately his New World property back to Michigan because he was in the process of interviewing for the subsequent position

After that position was withdrawn, he maintained possession of the property while attempting to recover unpaid commissions and profit sharing from Plaintiff.

At the end of February, Jones was offered a position with Tyler Technologies Inc.'s MUNIS Division.  MUNIS is Tyler's proprietary financial management software for public sector agencies.  After joining Tyler, Jones was told that Tyler had no interest in any information from New World, and Jones has not used or disclosed any  New World information in the course of his Tyler employment.

*The Public Sector*

Both Tyler and New World sell and support software applications for public agencies such as cities, counties, and school districts.  These agencies sometimes hire consultants to help them develop the specifications for new software applications.  They then publish requests for proposals (RFPs) in which they seek bids and proposals from software providers.  A proposal deadline is established, and interested vendors submit by the deadline.  The bids are then opened and reviewed.  Once opened, the bids are public record, as is the contract which the public agency eventually enters into with the successful bidder.

RFPs are published in newspapers and on internet bulletin board services, such as DemandStar, which will even provide automatic electronic notification to vendors each time a public agency issues an RFP.  The identities of potential customers are well

3

example, serves over 6,000 local government offices.

By obtaining copies of bids and contracts through freedom of information acts or public records laws, all vendors have access to the precise combinations of software, support, and licensing proposed by other vendors, as well as the prices quoted for those services.

New World is now asking this Court to issue a preliminary injunction which is wholly unsupported by the law or the facts, and which is clearly designed not to protect a reasonable competitive business interest.

<u>Argument</u>

I.  **PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION.**

A.  **<u>Standards For Granting Injunctive Relief.</u>**

The issuance of a preliminary injunction is governed by Fed. R. Civ. P. 65.  There are four factors to be balanced when considering a motion for a preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame & Museum, Inc. v Gentile Prods.*, 134 F3d 749, 753 (6th Cir. 1998).  The plaintiff carries the

4

burden of persuasion. *Leary v Daeschner*, 228 F3d 729, 739 (6th Cir. 2000), *citing Lujan v National Wildlife Fed'n*, 497 US 871, 110 S Ct 3177, 111 L Ed 2d 695 (1990).

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries a heavy burden of persuasion. *Mazurek v Armstrong*, 520 US 968, 972, 117 S Ct 1865, 138 L Ed 2d 162 (1997); *Leach v Ford Motor Co.*, 299 F Supp 2d 763, 769 (ED Mich 2004). A preliminary injunction is the strong arm of equity which should not be extended to cases which are doubtful or do not come within well-established principles of law. *Detroit Newspaper Publishers Ass'n v Detroit Typographical Union No. 18*, 471 F2d 872, 876 (6th Cir. 1972), cited for this proposition by *Am. Civil Liberties Union of Kentucky v McCreary County*, 354 F3d 438 (6th Cir. 2003). The proof required for the plaintiff to obtain a preliminary injunction is more stringent than the proof required to survive a summary judgment motion. *Daeschner, supra*, 228 F3d at 739.

Moreover, the movant's burden is substantially heightened when, as here, the plaintiff seeks some relief other than the maintenance of the status quo. Where the movant seeks to achieve more than the status quo, its burden is substantially heightened:

> In cases, such as here, where plaintiff seeks preliminary injunctive relief not to maintain the status quo but rather to alter it so that he receives essentially all of the relief to which he would be entitled after a successful trial on the merits, plaintiff must "satisfy an even heavier burden of showing that the four factors listed above weight heavily and compellingly in plaintiff's favor before such an injunction may be issued."

5

*Nevrona v. Webcraft Technologies, Inc*, 921 F Supp 1568, 1571 (ED Mich 1996), quoting

*SCFC ILC, Inc v VISA USA, Inc*, 936 F2d 1096, 1098 (10th Cir 1991).

In this case, even absent the heightened showing it must make, Plaintiff cannot
make the showing necessary for the issuance of a preliminary injunction. Balancing of
all of the equitable factors demonstrates that a preliminary injunction is wholly
unwarranted.

### B. Plaintiff Does Not Meet The Requirements For A Preliminary Injunction.

Michigan's Antitrust Reform Act (MARA) provides that "[a] contract ... between
2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant
market is unlawful." MCL 445.772. Agreements not to compete, however, are
authorized by § 4a of the MARA, MCL 445.774a, which provides in relevant part:

> An employer may obtain from an employee an agreement or covenant
> which protects an employer's reasonable competitive business interests
> and expressly prohibits an employee from engaging in employment or a
> line of business after termination of employment if the agreement or
> covenant is reasonable as to its duration, geographical area, and the type
> of employment or line of business. To the extent any such agreement or
> covenant is found to be unreasonable in any respect, a court may limit the
> agreement in order to render it reasonable in light of the circumstances in
> which it was made and specifically enforce the agreement as limited.

The foregoing § 4a represents a codification of the common law rule "that the
enforceability of non-competition agreements depends on their reasonableness." *Bristol
Window and Door, Inc. v Hoogenstyn*, 250 Mich App 478, 495, 650 NW2d 670 (2002).

6

Thus, a restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public.

Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than preventing mere competition. *United Rentals (North America), Inc. v Keizer*, 202 F Supp 2d 727, 740 (WD Mich 2002). To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with his employer, but not prohibit the employee from using general knowledge or skill. *Id.; Follmer, Rudzewicz & Co., PC v Kosco*, 420 Mich 394, 402-404, 362 N.W.2d 676 (1984). Michigan law is clear that a desire to prevent competition from former employees is not a reasonable business interest. *Ram Products Co, Inc v Chauncey*, 967 F Supp 1071, 1091-1092 (ND Ind 1997) (applying Michigan law) . See also *Kelsey-Hayes Co v Maleki*, 765 F Supp 402, 407 (ED Mich 1991), vacated by settlement, 889 F Supp 1583 (ED Mich 1991) ("Such an interest must be something greater than mere competition, because a prohibition of all competition is a restraint of trade").

**Plaintiff Cannot Demonstrate A Strong Likelihood of Success On The Merits.**

In order to show a strong likelihood of success on the merits in this matter, the plaintiff must show that the non-competition agreement fits within the exception to Michigan Anti-Trust Reform Act. That is, Plaintiff must show that the agreement protects its reasonable competitive business interests and that it is reasonable in duration, geographical scope, and the type of employment or line of business proscribed. Plaintiff cannot meet these requirements.

> **a.      Plaintiff cannot show that the non-competition agreement protects its reasonable competitive business interests.**

Plaintiff New World has made no attempt to define the reasonable competitive business interests the non-competition agreement is intended to protect. The identities of customers and prospective customers are well known to all vendors in the industry, including Tyler and New World.[2]

Public sector agencies typically issue requests for proposals which are publicly disseminated. For example, the plaintiff's papers refer to a pre-proposal conference in the Town of Palm Beach, Florida. (Plaintiff's complaint, Exhibit 5). The Town of Palm Beach issued its request for proposals (RFP) on February 15, 2006, before Jones began to work for Tyler. The RFP was published on February 19 and 26 in the Palm Beach Post,

---

[2] See e.g., the excerpts from the Onvia DemandStar website, Exhibit B, which offers a service whereby vendors can "Learn About Government Contracting Business Intelligence" and receive electronic notification each time a DemandStar-registered agency issues a request for proposals.

and was also placed on the DemandStar website. (Exhibit C). There are 40 potential suppliers for this contract, including Tyler's MUNIS Division and New World Systems. (Exhibit D).[3] Consequently, Tyler was aware of this customer – and all of its other customers and prospects – independent of any information from New World.

The public nature of the bidding process, the fact that proposals are open to the public after the bids are opened,[4] and the widespread dissemination of information by services such as DemandStar preclude any suggestion that New World is attempting to protect a reasonable competitive business interest, particularly in light of New World's complete failure to provide evidence of any such interest.

New World's brief relies entirely on an unsupported claim that confidential information may be disclosed, but that issue is not part of the present hearing and will be addressed following the expedited discovery period. Moreover, the mere assertion of inevitable disclosure is insufficient under Michigan law.

In *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 134 (2002), a case involving an alleged threatened misappropriation of trade secrets, the Michigan Court of Appeals held that "for a party to make a claim of threatened misappropriation, whether under a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and a competitor's employment of

---

[3] Exhibit D is an excerpt from the DemandStar website, which lists potential suppliers for this project. Only the page listing MUNIS and New World has been attached.
[4] See e.g., Florida's open records law, Chapter 119.01 et seq., Florida Statutes.

the party's former employee who has knowledge of trade secrets." As held by that court, the plaintiff had "failed to even suggest a specific trade secret that the defendants were likely to misappropriate," and that "there is no reason to believe that [the defendant] did not have expertise comparable to that of [the plaintiff] at the time [the defendant] hired [the former employee]." *Id.*

Plaintiff has failed to identify with any specificity what alleged confidential information is at risk and that this risk is sufficient to support a non-competition agreement. As held by the Michigan Supreme Court in *Follmer, Rudzewicz, supra,*, "an employee is entitled to the unrestricted use of general information acquired during the course of his employment or information generally known in the trade or readily ascertainable." Consistent with *Follmer, Rudzewicz,* courts applying Michigan law have not hesitated to refuse to enforce non-competition agreements when there has been an inadequate showing that confidential or trade secret information is at risk.

For example, in *Gateway 2000, Inc v Kelley*, 9 F Supp2d 790, 795, 797 (ED Mich 1998), the court rejected the former employer's request for a preliminary injunction to enforce a non-competition agreement in part because the employer failed to establish with specificity the alleged confidential information at risk sufficient to support a non-competition agreement. As held by that court, the moving party "bears the initial burden on the first prong of the test of showing that enforcement of the covenant is reasonably necessary to protect its business." *Id.* at 795 (internal quotations omitted).

In that case, while the employer alleged that it sought to protect confidential information, it failed to establish the specific confidential information that was at risk, and its motion for a preliminary injunction was denied.

Similarly, the Michigan Court of Appeals in *Godlan, Inc v Whiteford and DCL, Inc,* (2003 WL 1094114, March 11, 2003) (unpublished, attached as Exhibit E), relied upon *Follmer, Rudzewicz* in affirming the granting of summary disposition for the defendants, holding that the plaintiff failed to establish that sufficient confidential information was at risk to support a non-competition agreement. As noted by the court, the plaintiff in that case had only made conclusory allegations as to the knowledge allegedly learned by the employee, this was not sufficient to create a genuine issue of fact. *Godlan,* p 3, fn 3.

David Materne's affidavit (Exhibit 3 to Plaintiff's brief) makes clear that the information contained in the ACT database, about which Plaintiff is most concerned, is drawn from public sources. There are vague references to other information found in the database, but Plaintiff offers no specifics.

In the Snow affidavit, Plaintiff's Exhibit 5, p 18, Snow describes an entry in the ACT database as: "Harold Sample City Manager Dade City 38020 Meridian Avenue Dade City FL 33425." A 30-second search on the internet produced Exhibit F hereto, which shows the same information and more.

11

advance Plaintiff's assertions. If anything, they corroborate Defendants' position that Jones' employment by Tyler does not affect New World. Jones' e-mail to Lester Wright at Government Services Group (Exhibit 5, pp 20-21) is actually a response to Wright's inquiring e-mail, in which Wright identifies his company as "a current MUNIS client." New World is therefore seeking an injunction because Tyler's current customers contact it and Tyler's employee Jones responded.

Jones' e-mail to Spencer Wilson at the Town of Palm Beach post-dates the published RFP, and elicited a short response in which Wilson advised Jones that the RFP had been posted on DemandStar and that there was a pre-bid meeting on March 10. This involves neither the exchange nor disclosure of any confidential information.

Finally, an e-mail exchange between Jones and the City of North Miami (Exhibit 5, p 24) shows again a customer advising Jones that the process for awarding a contract is in place and must be followed. As the e-mail to Jones states:

> [W]e have turned the process over to FLC for the needs assessment and for helping us select a vendor. To be fair, as we told your counterparts at New World, they really need to sit back and wait this process out.

The North Miami software project was the subject of an RFP published April 6.

It is evident that, while Plaintiff may profess that it fears a competitive effect, it has not offered any evidence to show any reasonable competitive business interest the non-competition agreement is intended to protect.

**b.** **The non-competition agreement is unreasonable in duration.**

The non-competition agreement is for a period of four years. Plaintiff makes no attempt to show that this extraordinary length of time is necessary or bears any relationship to the realities of the marketplace. This excessive duration is particularly unreasonable when combined with the other restrictions in the agreement.

**c.** **The non-competition agreement is unreasonable in geographic scope.**

Plaintiff asks this Court to summarily enforce an agreement that prohibits Jones from being employed "in any state in the United States in which New World Systems has an existing customer determined as of the date of termination." Plaintiff has not identified the customers or the states. More importantly, at the time of his termination, Jones' territory encompassed only four states at most, and his activities were primarily focused in Florida. Plaintiff cannot explain – and has not attempted to explain – how it is reasonable to preclude Jones from working anywhere in the United States for four years.

**d.** **The non-competition agreement is unreasonable in the type of employment or line of business in which Defendant Jones is prohibited from engaging.**

That the non-competition agreement is unreasonable is further underscored by reviewing the term "Restricted Business" as used in the non-competition agreement. Plaintiff desires to prevent Jones from working anywhere in the United States for the

or work for an individual, firm, or corporation engaged in a 'Restricted Business[.]'"

"Restricted Business" is defined as "any business involved in the development, sale and/or support of application software programs or systems for use by public sector organizations." "Public Sector Organizations" is in turn defined to include "cities, counties, municipalities, towns, townships, or other local, state or federal governmental bodies, boards or agencies, police departments, fire departments, jail management organizations, court management organizations, public or private, state, local or regional schools and school districts, utilities (both public and private), units within such organizations and similar public and quasi-public organizations and agencies, federal, state or local."

The agreement does not simply prohibit Jones from working as a sales representative for a competitor, it prohibits him from working for a competitor in any capacity, regardless of his duties and responsibilities. Applying the terms as written would prohibit Jones from working for Microsoft, Compuware, CompUSA, Best Buy, or Circuit City, since they all are "involved in the development, sale and/or support of application software programs or systems for use by public sector organizations." The Computing and Information Technology Division at Wayne State University, for example, would be considered a "Restricted Business" because it is "involved in the

by" a public sector organization, namely Wayne State.

Restrictive covenants in a non-competition agreement are to be narrowly construed. *United Rentals, supra* at 408. For example, in *United Rentals*, the Sixth Circuit held that a non-competition agreement that restricted the former employee from engaging "in the operation of any equipment, sale, rental or leasing business" in a particular geographic area only precluded the actual operation of the business enterprise in that area and did not otherwise prevent the transaction of business within the area by the employee whose physical office was located elsewhere. *Id.* at 406-407.

Similarly, in *A Complete Home Care Agency v Gutierrez*, (2004 WL 1459450, June 29, 2004) (unpublished, attached as Exhibit G), the Michigan Court of Appeals affirmed the trial court's refusal to enforce a non-competition agreement that prohibited a home-care, nursing employee from performing any "services" for her former employer's clients. As held by the court, the non-competition provision was unreasonably broad and therefore invalid under MCL 445.774a. *Id.* at *1. Specifically, the court held that an agreement that precluded the plaintiff from performing any services whatsoever for a customer of her former employer was overly broad as to the type of employment or line of business restricted since it was not limited to nursing services. Accordingly, although the employee had gone to work for a competitor of her former employer performing nursing services for the customer, the court affirmed that the non-

competition agreement was overly broad and therefore affirmed the granting of summary disposition to the defendant employee.

As made clear by the decisions in *United Rentals* and *Gutierrez*, in determining whether the non-competition agreement in this case is reasonable and/or enforceable, the specific language of the non-competition provision must be examined.  The provision at issue, however, does not survive this scrutiny.

### 2.  Plaintiff Cannot Demonstrate Irreparable Harm.

To establish irreparable harm, a party seeking preliminary injunctive relief must demonstrate that he is threatened by some injury for which there exists no adequate legal remedy such as monetary damages. *Sampson v Murray*, 415 US 61, 88, 94 S Ct 937, 39 L Ed 2d 166 (1974); *Detroit Newspaper Publishers Ass'n, supra* at 877.  The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other collective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Sampson*, 415 US at 90, 94 S Ct 937.

In the present case, Plaintiff apparently fears that it may lose business to Tyler as a result of Jones' efforts.  Setting aside the substantial problems Plaintiff will have in proving that Jones' alleged breach would be the proximate cause of such a loss, this does not constitute irreparable harm.  Plaintiff is well aware what it is bidding and what

its costs are. It is thus able to calculate lost profits, which is a classic example of damages supporting a remedy at law, not irreparable harm.

In *Thermatool Corporation v Borzym,* 227 Mich App 366, 575 NW2d 334 (1998), the Michigan Court of Appeals observed:

> In order to establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty. The injury must be both certain and great, and it must be actual rather than theoretical. * * * Economic injuries are not irreparable because they can be remedied by damages at law. * * * A relative deterioration of competitive position does not in itself suffice to establish irreparable injury.

227 Mich App at 377 (internal citations omitted).

Assuming Plaintiff can overcome its proof issues, any loss it could demonstrate would be compensable by damages and therefore not irreparable. Injunctive relief is therefore inappropriate.

### 3. The Equities Do Not Favor Injunctive Relief.

Jones did not voluntarily quit his position – he was terminated for poor sales and for not meeting his sales quota. Plaintiff is therefore taking the position that a salesman it terminated as a poor performer will somehow be able now to visit irreparable harm upon the Plaintiff to such an extent that this Court should take the drastic and extraordinary step of prohibiting Jones from working in the United States for the next four years. Such an order would dramatically injure Jones. It would also significantly

impair the public interest by putting the judicial imprimatur on a blatantly excessive, anticompetitive agreement.

As demonstrated above, non-competition agreements have been carved out as an exception to Michigan's antitrust law. To approve and enforce the Plaintiff's agreement as written would cause the exception to swallow the rule. There simply is no evidentiary basis to do so.

## **Conclusion**

For the foregoing reasons, Defendants pray that this Honorable Court will deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

**VERCRUYSSE MURRAY & CALZONE, P.C.**

By:    <u>s/Daniel J. Bernard</u>
        Daniel J. Bernard (P34225)
        William E. Altman (P52788)
31780 Telegraph Road, Suite 200
Bingham Farms, MI 48025-3469
(248) 540-8019
Dated: May 10, 2006    **Attorneys for Defendants**

I hereby certify that on May 10, 2006, Defendants' Brief in Response to Plaintiff's Motion for Preliminary Injunction Regarding Non-Competition was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Ralph R. Safford and Mary Ann Hart</u>, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>none.</u>

/s/ Daniel J. Bernard
Daniel J. Bernard (P34225)
Vercruysse Murray & Calzone, P.C.
31780 Telegraph Road, Ste. 200
Bingham Farms, MI 48025-3469
dbernard@vmclaw.com
(248) 540-8019
