Westlaw.

Not Reported in N.W.2d                                                                                                  Page 1

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463

**(Cite as: 2004 WL 1459450 (Mich.App.))**

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Michigan.
A COMPLETE HOME CARE AGENCY, INC., Plaintiff-Appellant,
v.
Theresa GUTIERREZ and Atrium Home and Health Care Services, Inc., Defendants-Appellees.
No. 246280.

June 29, 2004.

Before: MURPHY, P.J., and JANSEN and COOPER, JJ.

[UNPUBLISHED]

PER CURIAM.

*1 Plaintiff A Complete Home Care Agency, Inc., appeals as of right the order granting defendants Theresa Gutierrez and Atrium Home and Health Care Services, Inc.'s ("Atrium"), motion for summary disposition regarding plaintiff's claims of breach of covenant not to compete and tortious interference with contractual relations pursuant to MCR 2.116(C)(10). We affirm.

I. Facts

Ms. Gutierrez began working for plaintiff in September of 2000, and additionally began working for Atrium on a part-time basis in July of 2001. As a condition of her employment with plaintiff, Ms. Gutierrez signed a covenant not to compete. [FN1] Through her work for plaintiff, Ms. Gutierrez provided nursing services in the home of Michael Boyagian. Mr. Boyagian required twenty-four hour nursing care, which was provided by employees of both plaintiff and Atrium. In January of 2002, Ms. Gutierrez left the employ of plaintiff to work for Atrium on a full-time basis in order to secure health insurance. At that time, Ms. Gutierrez began providing nursing services in Mr. Boyagian's home on a full-time basis in her capacity as an Atrium employee.

> FN1. The covenant was part of plaintiff's employment contracts and also appeared on employee time slips. It provided:
> I AGREE AND UNDERSTAND THAT I WILL NOT PERFORM ANY SERVICES FOR THE CLIENT DIRECTLY, OR INDIRECTLY, THROUGH ANOTHER AGENCY, INDIVIDUAL, ENTITY OTHER THAN "A COMPLETE HOME CARE" AGENCY, FOR A PERIOD OF SIX (6) MONTHS AFTER THE LAST DAY WORKED ON ANY OF YOUR ASSIGNMENTS. [Opinion and Order, January 9, 2003, p 3.] The covenant does not specifically limit the geographical area in which the employee's work is restricted.

Plaintiff brought the instant lawsuit against defendants alleging that Ms. Gutierrez breached the covenant not to compete and that Atrium interfered with its contractual relationship with Ms. Gutierrez. Plaintiff also contended that Atrium had interfered with its contractual relationship with its client, Mr. Boyagian. [FN2] The trial court granted defendants' motion for summary disposition of all of plaintiff's claims. The trial court held that the covenant was too broad with regard to the type of employment restricted and was, therefore, unreasonable and invalid as a matter of law pursuant to MCL 445.774a. Plaintiff also failed to demonstrate wrongful conduct on the part of Atrium or conduct that was malicious and unjustified at law to support its claim of tortious interference.

> FN2. Plaintiff's president, Cynthia Pace, admitted in deposition, however, that it did not have a contract with Mr. Boyagian.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[Deposition of Cynthia Pace, July 18, 2002, p 36.] The trial court found the issue abandoned as plaintiff failed to address it in response to defendants' motion for summary disposition. As plaintiff did not present evidence that a contractual relationship existed between plaintiff and Mr. Boyagian to counter Ms. Pace's statement, the trial court properly dismissed this claim.

## II. Legal Analysis

We review a trial court's determination regarding a motion for summary disposition de novo. [FN3] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. [FN4] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in the light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists." [FN5] "Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." [FN6]

> FN3. *Beaudrie v. Henderson,* 465 Mich. 124, 129; 631 NW2d 308 (2001).
>
> FN4. *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc,* 238 Mich.App 394, 397; 605 NW2d 685 (1999)
>
> FN5. *Singer v. American States Ins,* 245 Mich.App 370, 374; 631 NW2d 34 (2001).
>
> FN6. *MacDonald v. PKT, Inc,* 464 Mich. 322, 332; 628 NW2d 33 (2001).

### A. Breach of Covenant Not to Compete

Plaintiff first argues that the trial court erred in finding that the covenant not to compete was legally invalid. We disagree. Plaintiff's covenant is unreasonably broad, and therefore, invalid pursuant to MCL 445.774a.

Agreements not to compete in an employment situation are allowable in Michigan only if they are reasonable. [FN7] However, courts are circumspect when considering non-compete clauses in employment contracts. [FN8] MCL 445.774a provides:

> FN7. MCL 445.774a; *Thermatool Corp v. Borzym,* 227 Mich.App 366, 372; 575 NW2d 334 (1998).
>
> FN8. See *In re Spradlin,* 274 BR 701, 708-709 (ED Mich, 2002), citing *Woodward v. Cadillac Overall Supply Co,* 396 Mich. 379, 392-393; 240 NW2d 710 (WILLIAMS, J, dissenting), *Bryan v. Lincare, Inc,* 2000 U.S. Dist LEXIS 1109 (ED Mich, 2000) (reasoning that Michigan courts are more hostile to employer/employee non-compete agreements than those involved in the sale of a business).

*2 An employer may obtain from an employee an agreement of covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. [FN9]

> FN9. MCL 445.774a(1).

The six-month duration of a covenant not to compete has been found to be a reasonable time period. [FN10]

> FN10. See *Superior Consulting Co v. Walling,* 851 F Supp 839, 847 (ED Mich, 1994) (finding six-month duration

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463

**(Cite as: 2004 WL 1459450 (Mich.App.))**

reasonable); *Robert Half Internat'l, Inc v. Van Steenis,* 784 F Supp 1263, 1274 (ED Mich, 1991) (finding one-year duration reasonable).

We must determine, however, whether the covenant which restricts Ms. Gutierrez from performing "any services for the client," is reasonable with regard to the type of employment or line of business restricted. Ms. Pace testified at her deposition that the purpose of the covenant is to prevent former employees from performing *any* service for a client for six months after the termination of her employment, including such services as haircutting, dogwalking or grocery shopping. [FN11] Because the covenant restricts Ms. Gutierrez from doing *any* kind of work after her termination from plaintiff's employ, the trial court properly found that the restriction is unreasonably broad, and therefore, invalid as a matter of law.

> FN11. Deposition of Cynthia Pace, July 18, 2002, pp 26-27.

Plaintiff contends that it would be reasonable, based on the facts of the case, to read the covenant to restrict Ms. Gutierrez from performing any *nursing* services for six months after her termination from plaintiff. We note, however, that MCL 445.774a provides that the court *"may* limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited." [FN12] The statute does not dictate that a court *must* limit the agreement. "In construing a statute, the words used by the Legislature must be given their common, ordinary meaning," and we must apply these unambiguous terms as written. [FN13] There is no indication in the statute that a trial court was required to reform an unreasonable covenant to "render it reasonable," and therefore, enforceable. Accordingly, the trial court did not err in failing to limit the covenant not to compete.

> FN12. MCL 445.774a (emphasis added).
>
> FN13. *Ligouri v. Wyandotte Hosp & Med Ctr,* 253 Mich.App 372, 376; 655 NW2d 592 (2002), quoting *Veenstra v. Washtenaw Country Club,* 466 Mich. 155, 159-160; 645 NW2d 643 (2002).

B. Tortious Interference with Contractual Relations

Plaintiff also contends that the trial court erred in finding that plaintiff failed to establish a prima facie case of tortious interference with contractual relations. We again disagree.

To establish tortious interference with a business relationship or contract, the plaintiff must prove that the interference was improper by showing that the defendant committed an intentional act which lacked justification and purposely interfered with the plaintiff's contractual rights or business relationship. [FN14] Improper interference can be established by: "(1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." [FN15] In order to prove that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. [FN16] Actions motivated by legitimate business reasons do not constitute improper motive or interference. [FN17]

> FN14. *AOPP v. Auto Club Ins Ass'n,* 257 Mich.App 365, 383; 670 NW2d 569 (2003).
>
> FN15. *Id.*
>
> FN16. *CMI Internat'l, Inc v. Intermet Internat'l Corp,* 251 Mich.App 125, 131; 649 NW2d 808 (2002); *BPS Clinical Labs v Blue Cross & Blue Shield of Michigan (On Remand),* 217 Mich.App 687, 699; 552 NW2d 919 (1996).
>
> FN17. *BPS Clinical Labs, supra* at 698-699.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                    Page 4

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463

**(Cite as: 2004 WL 1459450 (Mich.App.))**

*3 Plaintiff failed to present evidence that Atrium committed an intentional act that was wrongful per se. Ms. Gutierrez testified at her deposition that she applied for work with Atrium, first to pick up additional hours, and then to gain health benefits. [FN18] Atrium did not solicit Ms. Gutierrez's application nor take improper actions to interfere with her contractual relationship with plaintiff. Accordingly, it was not wrongful per se for Atrium to employ Ms. Gutierrez.

> FN18. Deposition of Theresa Gutierrez, May 15, 2002, pp 12-14, 19-21.

Plaintiff also failed to create a genuine issue of material fact that Atrium intentionally committed a lawful act with malice or unjustified in law. Atrium's president, Lisa Mazur, admitted in her deposition in a separate, but similar, lawsuit that she assumed employees she hired who were already employed in the health care field were bound by covenants not to compete, but that she hired them anyway. [FN19] Plaintiff also sent Atrium a letter in February of 2002, informing Atrium of Ms. Gutierrez's covenant not to compete, but Atrium continued to employ Ms. Gutierrez. Even taking all of these allegations as true, plaintiff has not established an improper motive or malice. There is no evidence that Atrium hired Ms. Gutierrez for any reason other than the legitimate business reason of obtaining a qualified employee. Furthermore, as we find the covenant not to compete invalid as a matter of law, Atrium's disregard of the covenant does not amount to malicious or unjustified conduct. Accordingly, the trial court properly granted defendants' motion for summary disposition on this ground.

> FN19. Deposition of Lisa Mazur, January 30, 2002, pp 21-22. This testimony was given at the same time that Ms. Gutierrez began working for Atrium full-time.

Affirmed.

JANSEN, J. (concurring in part and dissenting in part).

JANSEN, J.

I respectfully dissent from Section II A of the majority opinion, as I would find that the trial court erred in finding that the covenant not to compete was legally invalid. I concur with the majority in all other respects and, thus, I would affirm in part and reverse in part.

On appeal, a trial court's decision on a motion for summary disposition is reviewed de novo. *Dressel v. Ameribank,* 468 Mich. 557, 561; 664 NW2d 151 (2003). Under MCR 2.116(C)(10), summary disposition is proper when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allstate Ins Co v. State,* 259 Mich.App 705, 709-710; 675 NW2d 857 (2003). This Court also reviews questions involving contract construction de novo. *Old Kent Bank v. Sobczak,* 243 Mich.App 57, 61; 620 NW2d 663 (2000).

On review de novo, I would find that the convent not to compete, which was signed by defendant Gutierrez, is enforceable. Agreements not to compete are permissible in Michigan if they are reasonable. MCL 445.774a(1); *Thermatool Corp v. Borzym,* 227 Mich.App 366, 372; 575 NW2d 334 (1998). Pursuant to MCL 445.774a(1):

> *4 An employer may obtain from an employee an agreement or covenant which *protects an employer's reasonable competitive business interests* and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is *reasonable as to its duration, geographical area, and the type of employment or line of business.* To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement in order to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. [Emphasis added.]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                                                  Page 5

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463

**(Cite as: 2004 WL 1459450 (Mich.App.))**

Michigan law requires that we narrowly construe restrictive covenants. *United Rentals, Inc v. Keizer,* 355 F3d 399, 408 (CA 6 2004).

The restrictive covenant in question provides:
> I AGREE AND UNDERSTAND THAT I WILL NOT PERFORM ANY SERVICES FOR THE CLIENT DIRECTLY, OR INDIRECTLY, THROUGH ANOTHER AGENCY, INDIVIDUAL, ENTITY OTHER THAN "A COMPLETE HOME CARE" AGENCY, FOR A PERIOD OF SIX (6) MONTHS AFTER THE LAST DAY WORKED ON ANY OF YOUR ASSIGNMENTS.

I agree with the majority, with regard to its finding that a six-month duration is a reasonable time period and, thus, would not support the trial court's grant of summary disposition. See *Superior Consulting Co v. Walling,* 851 F Supp 839, 847 (ED Mich.1994). I would also find that the covenant is reasonable as to geographical area as it is limited to performance of services for plaintiff's clients for which Gutierrez provided service. But I disagree with the majority's finding that the restriction in the covenant is invalid as matter of law because it is unreasonably broad.

The restrictive covenant provides that Gutierrez will not "perform any services for the client." A restrictive covenant, which does not allow an employee to perform services for a client with which that employee provided service for on behalf of the employer he or she is leaving, for a limited period of six months, is not unreasonable. This is a reasonable restriction as to "type of employment or line of business," when read in context. A reading of the terms used in the covenant not to compete make it clear that the agreement was intended to prohibit Gutierrez from performing services for plaintiff's clients, for which she had provided services for during her employment with plaintiff. It is apparent that the restriction is limited to the services Gutierrez provided through her employment with plaintiff. A provision, which limits Gutierrez from performing services for six-months on clients that she serviced for plaintiff was reasonable as to line of work, narrowly restricting services to clients that Gutierrez serviced for plaintiff. This restriction is reasonable in this field of work because Gutierrez and other employees are put in a unique position where they develop personal relationships with the client. Without such restriction an employee could make a deal with the client and provide services independently from the employer who put her in contact with the client or, as is the present situation, could leave and go to another agency and take the client to another agency. Plaintiff offered evidence supporting that when Gutierrez terminated her employment with plaintiff she continued performing the same services during the same shift for the client for defendant Atrium as she had on behalf of plaintiff. The provision did not restrict Gutierrez from working in "any capacity for a competitor," see *Superior Consulting Co, supra* at 847, but instead only placed a restriction that if she did work for other agencies or competitors she could not provide services for clients she worked for while employed by plaintiff for a limited period of six months. [FN1]

> FN1. Even assuming that the phrase "any service for the client" is too broad the covenant should have merely been construed against plaintiff in favor of defendant such that "any service" was limited to the services Gutierrez provided to the client while she was employed by plaintiff. See *United Rentals, Inc, supra,* 355 F3d at 407, citing *Higgins v. Lawrence,* 107 Mich.App 178, 309 NW2d 194, 196 (1981).

*5 Gutierrez was free to compete in the field, she was just restricted from performing services for the "client" she serviced on behalf of plaintiff. Surely, Michael Boyagian was not the only individual in the area in need of home nursing care. The restrictive covenant did not prohibit plaintiff from gaining full time employment with benefits. Gutierrez was only restricted from performing services for clients she serviced on behalf of plaintiff; i.e., Boyagian.

In addition, the covenant at issue protected plaintiff's "reasonable competitive business interests." MCL 445.774a. The legitimate business

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-11603-DPH-VMM ECF No. 16-9, PageID.284 Filed 05/10/06 Page 6 of 6

Not Reported in N.W.2d                                                                                    Page 6

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463
**(Cite as: 2004 WL 1459450 (Mich.App.))**

interest is the retaining of clients and goodwill. This is clearly a reasonable competitive business interest under the circumstances of this case. Plaintiff places employees in the homes of clients where a situation is created in which it is the employee who develops the relationship with the client. If an employee leaves an employer and gains employment with another home care provider or decides to become an independent contractor it is a legitimate business concern that the client will follow the employee with which the client has developed a relationship. Clearly, this is the type of behavior the restrictive covenant was intended to prohibit.

In *Kelsey-Hayes Co v. Maleki,* 765 F Supp 402, 407, vacated pursuant to settlement 889 F Supp 1583 (ED Mich.1991), the court provided:

> [A] legitimate business interest .... must be something greater than mere competition, because a prohibition of all competition is in restraint of trade. To be reasonable, a covenant must protect against an employee gaining some unfair advantage in competition with his employer. Reasonable covenants may protect such legitimate interests as trade secrets, confidential information, close contact with the employer's customers or customer lists, or cost factors and pricing. An employer may *not* reasonably prohibit future use of general knowledge or skill.

Although, *Kelsey-Hayes Co, supra* has been vacated, the rationale was adopted by the court in *United Rentals, Inc v. Keizer,* 202 F Supp 2d 727 (WD Mich.2002) affirmed 353 F3d 399 (2004) ("the employer's business interest justifying such a restrictive covenant must be greater than mere competition.... In order to be reasonable, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with his employer, but not prohibit the employee's future use of general knowledge or skill"). The legitimate business interest in the present case is clearly greater than mere competition as the personal relationship an employee develops with plaintiff's clients creates an unfair advantage for employees in competition with plaintiff. The covenant in question protected plaintiff whose employees had close contact with clients and did not prohibit future use of general knowledge or skill. Gutierrez was free to use her general knowledge and skills anywhere and for anyone, except she was not allowed to provide service to clients she had serviced during her employment with plaintiff for a reasonable period of six months. Thus, the covenant not to compete included in Gutierrez's employment contract did not prohibit use of general knowledge and skill she had obtained by working for plaintiff. Therefore, the covenant not to compete that was included in the employment contract protected a reasonable competitive business interest of plaintiff for purposes of MCL 445.774a(1). [FN2]

> FN2. In *Tower Oil & Technology Co v. Buckley,* 99 Ill App 3d 637; 425 N.E.2d 1060, 1066-1067; 54 Ill Dec 843 (1981) (quoted and cited favorably in *In re Talmage,* 758 F.2d 162, 165-166 (CA 6 1985)), the appellate court for another state provided that the "protection of an established clientele from takeover by a former employee as a legitimate interest .... neither the existence or misuse of a trade secret is required to enforce a restrictive covenant."

*6 For the above reasons, I would find that the covenant not to compete included in Gutierrez's employment contract is reasonable for purposes of MCL 445.774a, and should have been enforced. I would reverse the trial court's grant of summary disposition in favor of defendants with regard to plaintiff's breach of the covenant not to compete claim. I concur with the majority in all other respects and, thus, I would affirm in part and reverse in part.

Not Reported in N.W.2d, 2004 WL 1459450 (Mich.App.), 2004-1 Trade Cases P 74,463

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.