**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NEW WORLD SYSTEMS CORPORATION,

                  Plaintiff,         Case No. 2:06-cv-11603
                                    Hon. Denise Page Hood

v.

CHAUNCEY JONES and TYLER        Magistrate Judge Virginia M. Morgan
TECHNOLOGIES, INC.,

                  Defendants.

---

| | |
|---|---|
| SAFFORD & BAKER, PLLC | VERCRUYSSE, MURRAY & CALZONE, PC |
| Ralph R. Safford (P24633) | Daniel J. Bernard (P34225) |
| Mary Ann Hart (P48994) | William E. Altman (P52788) |
| Matthew W. Bower (P66957) | Attorneys for Defendants |
| Attorneys for Plaintiff | 31780 Telegraph Road, Suite 200 |
| 40900 Woodward Avenue, Suite 275 | Bingham Farms, Michigan 48025 |
| Bloomfield Hills, Michigan 48304 | (248) 540-8019 |
| (248) 646-9100 | |

Claudia V. Babiarz (P36230)
Co-Counsel for Plaintiff
888 W. Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 269-1000

---

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION AND OTHER RELIEF**

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................... ii

    I.    THE NON-COMPETITION AGREEMENT PROTECTS NEW WORLD'S REASONABLE COMPETITIVE BUSINESS INTERESTS ............................................................................... 1

    II.    JONES IS NEITHER CREDIBLE NOR TRUSTWORTHY ...................................... 3

    III.    NEW WORLD HAS DEMONSTRATED IRREPARABLE HARM ................................................................................................................... 4

    IV.    NEW WORLD IS SEEKING INTERIM RELIEF ....................................... 4

## TABLE OF AUTHORITIES

**Federal Cases**

*Basicomputer Corp. v. Scott*,
973 F.2d 507 (6th Cir. 1992) ..................................................................................................4

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*,
67 F. Supp. 2d 764 (E.D. Mich. 1999)....................................................................................3

*Olsten Corp. v. Sommers*,
534 F. Supp. 395 (D. Or. 1982) ..............................................................................................2

*Overholt Crop Ins. Service Co. v. Travis*,
941 F.2d 1361 (8th Cir. 1991) .................................................................................................4

**Michigan Case**

*Thermatool Corp. v. Borzym*,
227 Mich. App. 366; 575 N.W.2d 334 (1998)........................................................................4

**Michigan Statute**

M.C.L. § 445.774a ..................................................................................................................5

**I.     THE NON-COMPETITION AGREEMENT PROTECTS NEW WORLD'S REASONABLE COMPETITIVE BUSINESS INTERESTS.**

In the public sector software industry, a key part of a sales representative's job is to establish and maintain relationships with prospective customers because the sales process for public entities is typically drawn out over several years. New World's review of the sales finalized by New World's Logos® division in 2005 reveals that, from the initial solicitation or contact with a customer until the date of closing, the average time elapsed was 39 months. The longest span from first contact to closing was 80 months. **Ex. 1**, ¶¶ 4, 19.

Companies in the public sector software industry often require their employees to sign non-competition agreements. See **Ex. 1**, ¶ 20. In fact, Defendants' contention that a non-competition agreement is not necessary to protect New World's reasonable business interests is ludicrous in light of the fact that Tyler requires its MUNIS employees to enter into non-competition agreements. Paragraph IX of the Jones' employment agreement with Tyler provides in pertinent part, "[I]t is agreed that Mr. Jones will not accept employment for one year by a direct competitor of MUNIS or compete directly within a territory including customers that he has serviced directly." *Plaintiff's Response to Defendants' Motion for Expedited Discovery*, Ex. 1, Snow Aff., Ex. A. Applying the arguments in Defendants' Brief, Tyler's non-competition agreement with Jones is not necessary to protect its own reasonable business interests.

The Non-Competition Agreement protects New World's reasonable competitive business interests because New World paid Jones for eight years to develop and maintain relationships with public entities in his assigned territories. New World supported Jones as he built up goodwill and developed a reputation for being trustworthy and knowledgeable about public sector software

1

solutions.  New World enabled Jones to devote many hours with its prospects so that he could learn the answers to questions such as the following:

- What hardware and software does the prospect currently have?
- What are its particular needs?
- What are the problems with its current system?
- When will it be ready to make a purchase?
- Who are the decision makers?  Who will or could influence them?

New World is not in business to recruit and train sales representatives so that its competitors can reap the rewards.  Without having contributed a dime to their development, Tyler is obtaining the benefit of the goodwill, the relationships, and the accumulated knowledge that Jones had developed with regard to New World's customers and prospects.  Indeed, a Tyler Vice President asked Jones to be prepared to discuss prospect information during his first week of employment with Tyler.[1]

Furthermore, a key element in the sales process is often the sales representative's comparison of his product and services to his competitors' products and services.  **Ex. 1**, ¶ 5.  As a former New World employee, Jones will have credibility when comparing New World's products to Tyler's, regardless of whether his comments about New World's software are accurate.  This Court should note that, in an e-mail recovered from his New World laptop computer by DFC, Jones disparaged New World's management, its support staff, and the functionality of its products to a third party.[2]  It is reasonable to assume that Jones will continue to denigrate New World as he solicits sales for Tyler.

Customer contacts constitute a legitimate interest of the employer entitled to protection by a non-competition covenant.  *Olsten Corp. v. Sommers*, 534 F. Supp. 395, 397 (D. Or. 1982).

---

[1] See *Brief in Support of Motion for Preliminary Injunction*, Ex. 5, Snow Aff., Ex. D.
[2] New World prefers not to have this document in the public record, but will make it available for this Court's review at the hearing.

2

New World is entitled to the benefit of its bargain which prevents Jones from competing after leaving the company. Defendants should not be allowed to profit from Jones' continued wrongdoing. See *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Ran*, 67 F. Supp. 2d 764, 779 (E.D. Mich. 1999).

## II.     JONES IS NEITHER CREDIBLE NOR TRUSTWORTHY.

Jones claims that after his termination, he did not immediately return New World's property because he was in the process of interviewing for another position. However, in the memo terminating his employment, New World instructed him to "return all company documentation and property including your laptop." See **Ex. 2**. Moreover, long after Jones was informed on January 31, 2006, that he would not be hired for the other position, he continued to keep the laptop and other materials. Jones ignored both verbal requests for the return of New World's materials and a March 8, 2006, letter demanding the return of the laptop and other property by March 17. See **Ex. 3**. Jones finally returned the laptop on March 22, after Tyler directed him to do so. See *Brief in Support of Motion for Preliminary Injunction*, Ex. 4.

Jones also claims that he retained his New World property pending resolution of his "claim for unpaid commissions." This is a vain attempt to justify his misconduct. Despite the fact that at the time of the termination of his employment, New World provided him with a financial accounting and asked him to notify it of any inaccuracies within one week, **Ex. 4**, Jones has *never* asserted any claim with regard to unpaid commissions, **Ex. 1**, ¶ 16. New World has consistently paid Jones all of the commissions due him at the time that they became due. **Ex. 1**, ¶ 15.

Moreover, as more fully discussed in Plaintiff's Brief, DFC's investigation reveals that, after accepting employment with Tyler, Jones used New World's laptop computer to create several files from ACT! marketing database. These reports were saved, and at least one report was copied

onto a CD. Given this evidence, Jones' averment that he has not used New World's information as a Tyler employee is simply not credible.

### III. NEW WORLD HAS DEMONSTRATED IRREPARABLE HARM.

Defendants, citing *Thermatool Corp. v. Borzym*, 227 Mich. App. 366; 575 N.W.2d 334 (1998), erroneously imply that breach of a non-competition agreement cannot constitute irreparable injury warranting injunctive relief. In fact, the *Thermatool* court specifically approved equitable remedies "[i]n cases where a party has flouted the terms of a noncompetition agreement." *Id*. at 375. The *Thermatool* court denied the plaintiff injunctive relief only because its allegations were limited to a single breach of the noncompetition agreement consisting of one sale to a known customer, and therefore the damages were easily calculable. *Id*. at 377-378.

The loss of customer goodwill constitutes irreparable injury because the damages flowing from such losses are difficult to compute. Likewise, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). In fact, irreparable injury can be inferred from a trial court's actual finding of a breach of a restrictive covenant by the defendant. *Overholt Crop Ins. Service Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991). Accordingly, New World has established irreparable harm necessitating injunctive relief.

### IV. NEW WORLD IS SEEKING INTERIM RELIEF.

The immediate issue for this Court is whether New World and Jones entered into a non-competition agreement. This Court need not determine whether every aspect of the provision is reasonable at this time. If, after the parties have had the opportunity to fully address the scope of the restrictions, this Court finds that non-competition provision to be unreasonable in any respect, Michigan law explicitly permits it to limit the provision to render it reasonable and specifically

enforce the non-competition provision as limited. See M.C.L. § 445.774a. In the interim, however, Defendants should not be permitted to profit from Jones' blatant disregard of his contractual obligations.

To the extent that this Court chooses to address the scope of the restrictions, it should note that Defendants do not accurately describe either the language of the provision or New World's interpretation of its reach. Defendants falsely assert that "Plaintiff desires to prevent Jones from working anywhere in the United States." In fact, "Restricted Business" is clearly limited to entities involved in the public sector software industry. New World has no objection to Jones selling non-competitive software products. Indeed, in discussions with defense counsel, New World has suggested that Tyler transfer Jones to a non-competitive position.

Finally, contrary to Defendants' claims, the Non-Competition Agreement does not prevent Jones from earning a living. Jones worked for computer/software companies that do not compete with New World prior to his tenure with the company. See **Ex. 1**, ¶ 21; **Ex. 5**. Similar employment would not violate his Non-Competition Agreement with New World.

SAFFORD & BAKER, PLLC

By: _s/Mary Ann Hart_

Ralph R. Safford (P24633)
Mary Ann Hart (P48994)
Matthew W. Bower (P66957)
Attorneys for Plaintiff
40900 Woodward Avenue, Suite 275
Bloomfield Hills, Michigan 48304
(248) 646-9100

Claudia V. Babiarz (P36230)
Co-Counsel for Plaintiff
888 W. Big Beaver Road, Suite 600
Troy, Michigan 48084
(248) 269-1000

Dated: May 12, 2006

6

**PROOF OF SERVICE**

  I hereby certify that on **May 12, 2006**, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Daniel J. Bernard and William E. Altman.

              s/Mary Ann Hart (P48994)
              Safford & Baker, PLLC
              40900 Woodward Avenue, Suite 275
              Bloomfield Hills, Michigan 48304
              (248) 646-9100
              mhart@saffordbaker.com